**W. T. HAGANS, Appellant,**

v.

**UNITED STATES of America,**
Appellee.

No. 19792.

United States Court of Appeals
Fifth Circuit.

March 21, 1963.

Rehearing Denied May 22, 1963.

J. Sewell Elliott, Macon, Ga., for appellant.

Truett Smith, Asst. U. S. Atty., Wilbur D. Owens, Jr., Asst. U. S. Atty., Floyd M. Buford, U. S. Atty., Macon, Ga., for appellee.

Before JONES and BELL, Circuit Judges, and GROOMS, District Judge.

GROOMS, District Judge.

Appellant Hagans was tried on a ten-count indictment which charged him with the possession, transportation and selling of nontax-paid whisky on March 1, 5 and 8, 1961, and with possession only on April 25, 1961, in violation of Title 26 U.S.C. §§ 5205(a) (2) and 5604(a).

Appellant made a timely motion to suppress as evidence against him the 206 gallons of whisky seized on April 25, 1961, and the subject matter of count ten, as being seized without a search warrant and not incident to any lawful arrest. His motion was denied, and he was put to trial on his plea of not guilty. He was acquitted on the transportation counts —two, five and eight—and convicted on all other counts, and was given four years concurrent sentences on each of the latter counts.

Appellant was convicted in 1943, 1945, 1948 and 1958 for violating the internal revenue laws respecting nontax-paid liquor. He served time on each sentence and was released from the last sentence on November 2, 1960, four months, less one day, from the first offense here involved. He claimed that he was then in poor health, and that he had made up his mind never again to fool with moonshine, but was "caught off balance" and entrapped into doing so.

On February 27, 1961, Melvin Daniels, a paid informer, contacted appellant and made an arrangement to pick up a load of whisky. Pursuant to such arrangements, Daniels went to appellant's home, on March 1, 1961, and was met by him and J. B. Smith. He procured from them 25 gallons of whisky on credit. This contraband was removed from a 1947 Plymouth automobile parked in the backyard of the home. Later in the day, Daniels delivered this whisky to Agents William W. Williams and George D. Ferguson. A few days later, following a telephone contact with appellant, Daniels and Agent Thomas D. Anderson, whose true identity was then unknown to appellant, met the latter at a cafe in Macon, Georgia. Daniels there paid for the prior purchase, and the three discussed future purchases from appellant.

Daniels called appellant on March 5, 1961, and late in the day went to his home accompanied by Anderson. Appellant took them to the garage[1] located in the rear of the house, opened the door, and removed 24 gallons of whisky from the trunk of the same 1947 Plymouth, and assisted in loading it into the Government car.

Daniels and Anderson returned to appellant's home on March 8, 1961. At the latter's request, Anderson loaned his car to J. B. Smith, who was sent by appellant to "go over and load the whisky." In about thirty minutes, Smith returned with 66 gallons of whisky. Anderson paid appellant $60.00 and promised the balance in a few days. On the next day, however, Anderson and Daniels met him at a cafe on the Columbus road and paid him the balance of $270.00.

On April 24, 1961, about three or four o'clock in the afternoon, Daniels made an arrangement and an appointment with appellant for a purchase and delivery of whisky at the latter's home around ten-thirty o'clock that night. Anderson accompanied by Williams and Agent Brooke L. Richards, who was aware of the dealings with appellant, arrived at the home about one-thirty o'clock on the morning of April 25th. They were followed closely by another car carrying two additional federal agents and two state agents. Anderson called to appellant, who came out of the house and met the first car as it arrived. When appellant saw the second car approaching he advised Anderson to turn his lights out quickly. Anderson did so.

Ferguson, who was in the second car, had kept himself posted on developments and during the 24th had obtained an arrest warrant[2] for appellant and Smith for the violation of March 1, 1961.

After the exchange between appellant and Anderson, Richards advised him that they were Federal Agents and that they had a warrant for his arrest, and then promptly placed him under arrest. Williams, upon seeing a man in the house who he correctly assumed was Smith, proceeded into the house and placed him[3] under arrest. Anderson went to the old 1947 Plymouth parked nearby and found that it was loaded with 20 gallons of whisky. After this, the officers went to the garage, entered and found a 1951 Ford loaded with 186 gallons of whisky.

---

1. Anderson testified that the car was in the garage. Daniels did not specifically refer to a garage, but said the car was "in a shelter out from his house."

2. The officers also had in their possession three daytime search warrants for cars.

These were returned unexecuted. The arrest warrant was returned executed.

3. Smith entered a plea of guilty and did not testify in the case.

There is a dispute in the evidence as to the manner by which the officers secured entry into the garage. Appellant claims that the garage was locked and that the officers broke a chain to secure entrance. The officers say that the doors were not locked but secured only by a hasp.

Appellant disputes the validity of the arrest warrant on the grounds that the complaint[4] upon which it was issued was inadequate as based on hearsay and was defective in that no facts were recited which would disclose the existence of probable cause.

The lower court did not rule on the validity of the arrest warrant, but held that Richards had reasonable grounds for believing that appellant had committed a felony,[5] and that, accordingly, the arrest was justified and the search and seizure was proper as an incident to a valid and lawful arrest. United States v. Rabinowitz, 339 U.S. 56, 70 S.Ct. 430, 94 L.Ed. 653; Draper v. United States, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327.

We will not attempt a summation of those facts which point to the conclusion that when Richards arrested appellant he possessed knowledge and reasonable trustworthy information under all the facts and circumstances sufficient to meet the test of probable cause, Carroll v. United States, 267 U.S. 132, 162, 45 S.Ct. 280, 288, 69 L.Ed. 543, but rest the conclusion on the facts recited.

Hewing to the line marked by the lower court, we are of the opinion, and so rule, that the court did not err in holding that Richards had reasonable grounds for believing that appellant had committed a felony, that his arrest was justified, and that the search and seizure was proper as an incident to a valid and lawful arrest, and was made in a lawful and reasonable manner. The fact that the arrest warrant may have been invalid, a fact which we do not decide, would not alter the results, since the Government may, and has justified it by showing that at the time of the arrest, a lawful arrest could have been made without a warrant. See DiBella v. United States, 2 Cir., 284 F.2d 897, 904, where the lower court was upheld in denying a motion to suppress.[6] Williams v. United States, 9 Cir., 273 F.2d 781; United States v. Ramirez, 9 Cir., 279 F.2d 712, footnote 1; United States v. Russian, D.C.Conn., 192 F.Supp. 183; Giordenello v. United States, 357 U.S. 480, 488, 78 S.Ct. 1245, 2 L.Ed.2d 1503.[7]

Since the search and seizure of April 25, 1961, was proper and lawful as an incident to a valid and lawful arrest, we do not reach appellant's claim that the presence of the whisky at the trial obtained on that occasion prejudiced his trial upon the other counts of the indictment.

---

4. Agent Ferguson stated the complaint was based on facts which were:
    "On March 1, 1961, Melvin Daniels purchased 25 gallons of nontaxpaid whiskey from W. T. Hagans and J. B. Smith in Upson County, Georgia, and delivered this nontaxpaid whiskey to Investigator Williams and me in Bibb County, Georgia."

5. Section 7608(b) (2) (B), enacted September 2, 1958, provides that any internal revenue agent charged with the duty of enforcing any of the criminal provisions of the internal revenue laws is authorized:
    "to make arrests without warrant for any offense against the United States relating to the internal revenue laws committed in his presence, or for any felony cognizable under such laws if ·

he has reasonable grounds to believe that the person to be arrested has committed or is committing any such felony."

6. The Supreme Court vacated the judgment and remanded the case with instructions to dismiss the appeal on the ground that the district court's order was interlocutory and not appealable. 369 U.S. 121, 82 S.Ct. 654, 7 L.Ed.2d 614.

7. The Court, in reversing the case on account of the invalidity of the arrest warrant, the Government having relied entirely on the validity of the warrant in the courts below, stated:
    "This is not to say, however, that in the event of a new trial the Government may not seek to justify petitioner's arrest without relying upon the warrant."

The question of entrapment was one of fact for the jury on conflicting evidence and was submitted on a comprehensive, fair, and legally accurate instruction which followed very closely the language employed by this Court, in Hamilton v. United States, 5 Cir., 221 F.2d 611, 614, and Demos v. United States, 5 Cir., 205 F.2d 596, 599, and by Judge Sibley, as District Judge, in United States v. Wray, D.C.N.D.Ga., 8 F.2d 429. Nothing therein contravenes the tests of Sorrells v. United States, 287 U.S. 435, 53 S.Ct. 210, 77 L.Ed. 413, or Sherman v. United States, 356 U.S. 369, 78 S.Ct. 819, 2 L.Ed.2d 848.

The case is affirmed.