[Crim. No. 11409.   Second Dist., Div. Four.   Mar. 3, 1967.]

THE PEOPLE, Plaintiff and Respondent, v. EDWARD ESPINOZA CASTRO, Defendant and Appellant.

Robert P. Mandler, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Stanton Price, Deputy Attorney General, for Plaintiff and Respondent.

FILES, P. J.—Defendant was found guilty of possession of marijuana in violation of Health and Safety Code section 11530. He is appealing from the judgment.

The evidence shows that on January 15, 1965, deputy sheriffs went to the residence at 3550½ Hunter Avenue, Los Angeles, with a warrant directing them to search the premises. Defendant, who was in the home, was served with the warrant, and he admitted the officers. They searched and found a quantity of marijuana cigarettes. Defendant was then arrested and charged with the offense.

The preliminary examination was conducted before the magistrate who had issued the warrant. Before commencing that examination defendant made a motion to quash the warrant, which motion was denied after a hearing at which oral

testimony was taken. Again at the trial (which was conducted upon the transcript of the proceedings before the magistrate) defendant challenged the legality of the warrant, without avail.

There can be no doubt that the evidence, if admissible, supports the judgment. The only questions raised here go to the admissibility of that evidence, as affected by the way it was obtained.

The search warrant was issued upon an affidavit of Deputy Sheriff Guenther.[1] The pertinent portions of the affidavit are as follows: ''[T]here is just, probable and reasonable cause to believe, and that he does believe, that there is now in the possession of Edward Castro on the premises located at and described as 3550½ Hunter Ave. Los Angeles—a single family dwelling . . . and on the person(s) of Edward Castro the following personal property, to wit: marijuana, heroin and dangerous drugs.

''Facts in support of issuance of search warrant:

''Your Affiant is informed that the above mentioned Edward Castro is engaged in illegal sale and furnishing of narcotics as verified of arrest mentioned under File Y-094-368 on January 15, 1965, where Sheriff's Officers approached the suspect and the above mentioned narcotics were obtained and literally purchased by an under Sheriff's Officer; to wit: one half pound of marijuana. The investigation initiated in East Los Angeles; that during the investigation of this sale and observation of the movements of the defendant and conversations with the defendant caused the officers to believe to Wit: Edward Castro was involved in furnishing and sale of narcotics. It was decided that the above mentioned Edward Castro was the source of narcotics given to a person, later arrested for the sale of narcotics; that the above mentioned Edward Castro did furnish the narcotics to the defendant in File Y-094-368, later was arrested for the above mentioned sale of narcotics. That in light of observations made by several deputies and later conversation with the above mentioned arrested suspect, your affiant is of the opinion that at the above mentioned address, the above type contraband to be found at location, that a felony has been and is being committed to Wit: possession and furnishing of narcotics.''

---

[1] The affidavit was not marked as an exhibit, though the record indicates that both the magistrate and the trial judge saw and considered it. We therefore treat the copy attached to respondent's brief as an augmentation of the record on appeal.

At the hearing on the motion to quash, the magistrate stated for the record that as a basis for issuing the warrant he did not receive any information except what was set forth in this affidavit.

The Fourth Amendment to the Constitution of the United States provides: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

This limitation upon searches applies to the states as well as to the federal government. (*Mapp* v. *Ohio,* 367 U.S. 643 [6 L.Ed.2d 1081, 81 S.Ct. 1684, 84 A.L.R.2d 933]; *Ker* v. *California,* 374 U.S. 23 [10 L.Ed.2d 726, 83 S.Ct. 1623].)

Similar restrictions upon the issuance of search warrants are found in the California Constitution, article I, section 19, and in California Penal Code sections 1525-1528.

It has long been established by the decisions of the United States Supreme Court than an affidavit containing only the opinions and conclusions of the affiant, without disclosure of the underlying facts, will not constitute "probable cause, supported by Oath or affirmation" within the meaning of the Fourth Amendment.

In *Nathanson* v. *United States* (1933) 290 U.S. 41 [78 L.Ed. 159, 54 S.Ct. 11] the court said (at p. 47): "Under the Fourth Amendment, an officer may not properly issue a warrant to search a private dwelling unless he can find probable cause therefor from facts or circumstances presented to him under oath or affirmation. Mere affirmance of belief or suspicion is not enough."

In *Aguilar* v. *Texas* (1964) 378 U.S. 108 [12 L.Ed.2d 723, 84 S.Ct. 1509] the court had before it a search warrant based upon an affidavit stating "Affiants have received reliable information from a credible person and do believe that heroin, marijuana, barbiturates and other narcotics and narcotic paraphernalia are being kept at the above described premises. . . ." The court said (at pp. 114-115): "Although an affidavit may be based on hearsay information and need not reflect the direct personal observations of the affiant, *Jones* v. *United States,* 362 U.S. 257 [4 L.Ed.2d 697, 80 S.Ct. 725, 78 A.L.R.2d 233], the magistrate must be informed of some of the underlying circumstances from which the informant concluded that the narcotics were where he claimed they were,

and some of the underlying circumstances from which the officer concluded that the informant, whose identity need not be disclosed, see *Rugendorf* v. *United States,* 376 U.S. 528 [11 L.Ed.2d 887, 84 S.Ct. 825], was 'credible' or his information 'reliable.' [Fn. omitted.] Otherwise, 'the inferences from the facts which lead to the complaint' will be drawn not 'by a neutral and detached magistrate,' as the Constitution requires, but instead, by a police officer 'engaged in the often competitive enterprise of ferreting out crime,' *Giordenello* v. *United States, supra,* 357 U.S. at 486 [2 L.Ed.2d at 1509, 78 S.Ct. at 1250]; *Johnson* v. *United States, supra,* 333 U.S. at 14 [92 L.Ed. at 440, 68 S.Ct. at 369], or, as in this case, by an unidentified informant.

"We conclude, therefore, that the search warrant should not have been issued because the affidavit did not provide a sufficient basis for a finding of probable cause and that the evidence obtained as a result of the search warrant was inadmissible in petitioner's trial."

In *United States* v. *Ventresca* (1965) 380 U.S. 102 [13 L.Ed.2d 684, 85 S.Ct. 741] the affidavit described in detail the observations made by the officers on seven different occasions, which, taken together, supported the inference that Ventresca was operating an illegal still. The Supreme Court held that this detailed affidavit met the standards laid down in the earlier decisions.

In reaching that conclusion, the court emphasized that the distinction between that case and *Aguilar* was in the kind of affidavits which the officers had presented. The opinion states (at pp. 108-109) : "This is not to say that probable cause can be made out by affidavits which are purely conclusory, stating only the affiant's or an informer's belief that probable cause exists without detailing any of the 'underlying circumstances' upon which that belief is based. See *Aguilar* v. *Texas, supra.* Recital of some of the underlying circumstances in the affidavit is essential if the magistrate is to perform his detached function and not serve merely as a rubber stamp for the police."

In the case at bench the affidavit does not contain anything comparable to the detailed statement of facts which the officers presented to the court in *Ventresca.* The affidavit here states no more than that the affiant is informed that Castro is engaged in furnishing narcotics, that an official investigation has been made, and that the affiant believes that Castro was the source of the marijuana which someone sold to an under-

cover officer recently. The affidavit contains no information as to what was in File Y-094-368, or any statement of what was observed or otherwise learned in the investigation which cast suspicion on Castro. Nor does it give any other factual basis for the affiant's belief that Castro was the source of the marijuana. Castro's connection with narcotics is attested only by the affiant's conclusion as to the significance of unspecified information supplied by unidentified and unsworn persons. This affidavit is subject to the defect which was fatal in *Nathanson* and *Aguilar*. The warrant therefore cannot be relied upon to justify the search and seizure.

However, the record of the trial contains other evidence bearing upon the legality of the arrest and search. By stipulation the case was tried upon the transcript of the preliminary examination and the transcript of the proceedings before the magistrate in which the grounds of the warrant were challenged. At the time this procedure was agreed upon this exchange occurred:

"MR. FUKUTO: I would offer that testimony, also, in support of the search.

"MR. BUBRICK: Your Honor, I would be happy to supply the Court with authority which says that that may not be done.

"MR. FUKUTO: Your Honor, we will have to contest that, then, too."

By this statement the prosecutor gave notice that he was not relying exclusively upon the warrant to establish the legality of the search. He was, in addition, offering the testimony taken before the magistrate for the purpose of showing that the search was proper irrespective of the validity of the warrant.

Defendant personally, as well as his attorney, then waived his right to a jury and his right to confrontation by witnesses, and stipulated that the People's case in chief might be submitted upon the combined transcript of the earlier proceedings.[2] Thereafter defendant rested without offering any evidence.

The transcript of the proceedings before the magistrate contains the testimony of Deputy Sheriff Guenther describing a narcotics investigation in which he had participated:

---

[2]In so stipulating, defendant did not waive anything of substance. This arrangement merely obviated the necessity of calling back the officer to repeat testimony which had already been given once in defendant's presence, and on which defendant's counsel had cross-examined.

On the evening of January 13, 1965, in a place called the Ebony Room in East Los Angeles, an undercover policewoman made a contact with a seller of marijuana named John Simon. Simon told the policewoman he would have to go someplace else to pick up some marijuana before he could deliver it to her. As Simon left the Ebony Room two officers followed him to 3550½ Hunter. Simon then returned to the Ebony Room and delivered about a pound and a half of marijuana to the policewoman.

A utilities check revealed that the occupant of the premises at 3550½ Hunter was Edward Castro, who Deputy Guenther knew had been convicted previously for a narcotics offense.

John Simon was arrested at 4:30 p.m. on January 15. He then told Deputy Guenther that his source was "Eddy" at 3550½ Hunter.

At about 9 or 10 o'clock that evening Deputy Guenther prepared the affidavit for a search warrant, took it to the home of a judge of the municipal court and obtained the warrant to search 3550½ Hunter. The search and arrest took place at about 11:30 that evening.

The testimony of Deputy Guenther, which was uncontradicted and unimpeached, indicates that, as of 11:30 p.m., he had reasonable cause to believe that defendant had been furnishing marijuana within the premises at 3550½ Hunter. Upon this ground Deputy Guenther was entitled to enter the home, arrest defendant and make a search incident to the arrest. (*People* v. *Cockrell*, 63 Cal.2d 659, 665 [47 Cal.Rptr. 788, 408 P.2d 116]; *People* v. *Sandoval*, 65 Cal.2d 303, 308 [54 Cal.Rptr. 123, 419 P.2d 187].) Had the officer acted without a warrant, it would have been immaterial whether the search preceded or followed the formal arrest. (*People* v. *Cockrell*, *supra*, 63 Cal.2d at p. 666.)

Here we have the case of an officer in a hurry, who took time to seek the determination of a magistrate. But in his haste the officer failed to set forth in his affidavit some facts which were well known to him. In these circumstances, does the invalidity of the warrant compel exclusion of the evidence which proves the guilt of defendant—evidence which the officer was entitled to seize without a warrant under well-established rules? We think not. Two important principles are here pertinent:

*First*: Although certain nonwarrant arrests and searches are permissible, the policy of the law is to encourage officers to use search warrants. (See *United States* v. *Ventresca*, 380 U.S. 102, 105-109 [13 L.Ed.2d 684, 687-689, 85 S.Ct. 741, 744-746].)

"[T]he informed and deliberate determinations of magistrates empowered to issue warrants . . . are to be preferred over the hurried action of officers. . . ." (*United States* v. *Lefkowitz*, 285 U.S. 452, 464 [76 L.Ed. 877, 882, 52 S.Ct. 420, 423, 82 A.L.R. 775, 781].)

*Second*: The rule which excludes evidence obtained by illegal searches was adopted for the purpose of eliminating the incentive for police officers to use illegal methods. (*Elkins* v. *United States*, 364 U.S. 206, 217 [4 L.Ed.2d 1669, 1677, 80 S.Ct. 1437, 1444].) In *People* v. *Cahan*, 44 Cal.2d 434, 448 [282 P.2d 905, 50 A.L.R.2d 513], the court said: "Given the exclusionary rule and a choice between securing evidence by legal rather than illegal means, officers will be impelled to obey the law themselves since not to do so will jeopardize their objectives."

That principle does not call for a rejection of the evidence in this case. Here the officer was guilty of no wrongdoing except faulty draftsmanship. To exclude the marijuana in this case would teach officers that it is folly to seek a warrant when they think they can get by without one. Given a choice between a nonwarrant arrest and a search based upon a magistrate's warrant, officers will be impelled to forego the latter, if a defect in the warrant procedure will invalidate an arrest and search which would have been legal without a warrant.

In *Giordenello* v. *United States* (1958) 357 U.S. 480 [2 L.Ed.2d 1503, 78 S.Ct. 1245] the court reversed a judgment because the arrest and search had been made pursuant to an invalid warrant of arrest. After the case reached the Supreme Court the government contended, for the first time, that the arrest was justified upon probable cause in the absence of a warrant. The Supreme Court concluded that that belated contention was not open to the government because the defendant had had no opportunity to meet it in the trial court. The court then added (at p. 488): "This is not to say, however, that in the event of a new trial the Government may not seek to justify petitioner's arrest without relying on the warrant."

In the case at bench, unlike *Giordenello*, the grounds for a nonwarrant arrest and search were established in the trial court by evidence introduced there for that very purpose, and defendant was so informed. Defendant cross-examined the prosecution witness in the hearing before the magistrate, and could have pursued the issue at the trial had he deemed it

advantageous to have done so. This is not a case where the issue of probable cause is raised by the prosecution for the first time on appeal.

In citing *Giordenello*, an arrest warrant case, we do not overlook an important distinction between arrest and search: A home may be entered without a warrant for the purpose of making an arrest upon reasonable cause to believe that a person inside should be arrested; but a home may not be entered without a warrant to make a search which is justified only by reasonable cause to believe that contraband will be found there. The information which the officers had did not justify their entering 3550½ Hunter without a warrant solely to search for marijuana. Thus it is arguable that this entry was illegal because the officers' subjective intent was to search pursuant to an invalid warrant, rather than to arrest a man who was subject to a lawful nonwarrant arrest. For all we know, they might not have made an arrest if the search had produced no evidence. But we do not think any such supposed subjective intent renders unlawful an entry and seizure which the law authorized upon the basis of facts then within the knowledge of the officers.

The judgment is affirmed.

Jefferson, J., and Kingsley, J., concurred.