[Crim. No. 11607.   In Bank.   Apr. 10, 1968.]

THE PEOPLE, Plaintiff and Respondent, v. TED STEVEN CHIMEL, Defendant and Appellant.

Keith C. Monroe for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Ronald M. George, Deputy Attorney General, for Plaintiff and Respondent.

TOBRINER, J.—In this case our conclusion that the judgment of conviction should be affirmed rests upon the following propositions: (1) Although the warrants for arrest constitu-

tionally failed under *People* v. *Sesslin, ante,* p. 418 [67 Cal. Rptr. 409, 439 P.2d 321], the arrests themselves can stand upon the ground of probable cause; (2) since the search of defendant's home at the time of the execution of the first arrest warrant constituted a "reasonable" search, the coins and other numismatic items thereby siezed could properly be introduced into evidence; (3) the failure to strike count II from the information after the committing magistrate held defendant to answer for only counts I and III did not constitute judicial error.

The rather bizarre facts of this case, which we must set forth in some detail as the foundation for our subsequent rulings, involve two burglaries of old and valuable coins. The first of these occurred at the Pulati home; the second at a coin shop called the Money Vault.

The night of the Pulati burglary, February 2, 1965, marked the one night, according to Mrs. Pulati, that defendant had missed a meeting of one of the three coin clubs in which defendant and the Pulatis were concurrent members during a period of approximately one-half year. Mrs. Pulati testified that defendant frequently dropped over to discuss coins with her husband and herself, that he had asked them whether their coins were insured, and that he was the only person besides the party who sold them their home who knew that the Pulatis kept coins there. Mrs. Pulati further testified that when she and her husband returned home on February 2, 1965, she found that, although the house had not been ransacked and valuable items in plain sight had not been taken, two drawers full of coins had been stolen.

The Money Vault burglary took place on the night of August 14, 1965. Slocum, the owner, testified that a few months before the burglary defendant had told him about a "big deal" he "had going" and had also asked him whether his coins were insured and, if so, whether Slocum wanted his shop "knocked over." Slocum thought defendant was joking. Slocum further testified that the stolen coins were taken from the area in the shop where he kept his valuable coins, and that only one other collector besides defendant knew where he had put them. The day after the burglary defendant called Slocum and said, "Well, I see you knocked your place over." After Slocum told defendant that it was a "sloppy" job, defendant replied that he had heard the job was "professional"; defendant then denied committing the burglary.

Ambrose, a neighbor of defendant, testified that on the eve-

ning of the Money Vault burglary he had asked defendant to accompany him on a bicycle ride but that defendant had refused because he had a "big deal going." Defendant then showed Ambrose a walkie-talkie in defendant's car that he said he planned to use and, manipulating it, unsuccessfully tried to contact someone called "Chuck." The next day defendant told Ambrose that "they" had broken into a coin shop. Later the same day, defendant called Ambrose back and told him that he had been joking. A few days later, when Ambrose read the newspaper account of the Money Vault burglary, he called the police and told them about defendant's remarks.

Officer Del Coma, who had responded to the burglary call at the Money Vault on the night of the crime, arrested defendant on August 25, 1965. According to the officer, he and defendant talked about the burglary generally and discussed the possibility of the return of the stolen coins, although "it was not definitely labeled as to who was going to return the coins." On August 30, the defendant returned to the police station with Charles Hamburger and Jones, an attorney representing Hamburger, for the purpose of negotiating the return of the Slocum coins in order to obtain a civil release from Slocum.

About a week after the conference, during which the parties disagreed over Slocum's obligation to itemize the stolen items, Slocum called defendant about his failure to return the coins. Slocum testified that defendant answered evasively. At approximately the same time, Officer Del Coma talked to Hamburger as to defendant's plans for his share of the stolen coins.

During the first week of September, Parsons, an owner of another coin shop, informed Officer Del Coma that defendant had told him he was involved in the Money Vault burglary. Parsons testified that when he advised defendant to return the coins to Slocum, defendant stated that he had already given them to someone else.

Officer Del Coma obtained an arrest warrant for defendant for the burglary of the Money Vault on the morning of September 13, 1965. At approximately 4 p.m. Officer Del Coma, who worked for the City of Orange, accompanied by two Santa Ana police officers, went to defendant's home in Santa Ana; defendant arrived 15 minutes later. Officer Del Coma showed defendant the warrant, placed him under arrest, and advised him of his rights. Over defendant's objection, Officer

Del Coma then searched the entire house and garage. Del Coma found and seized numerous coins and other numismatic items. None of the seized items were identified as those taken from the Money Vault.

Del Coma took defendant into custody and compiled an inventory of the seized items. Defendant was then released on bail. Two days later the Pulatis identified some of the seized items as the coins taken from their home in February 1965. On the basis of the Pulatis' identification, the Santa Ana police obtained a second warrant for defendant's arrest on September 16, 1965.

## I.

█ The complaints upon which both the September 13 and the September 16 arrest warrants were issued are the same type of printed form as the complaint held insufficient to support a valid warrant in *People* v. *Sesslin, supra, ante,* p. 418. For the reasons set forth in *Sesslin,* we hold that the warrants here, because of constitutional infirmity under the *Giordenello-Aguilar* standard, cannot support a legal arrest.

The legality of an arrest, however, cannot depend exclusively upon the validity of the warrant pursuant to which the arrest is executed since an arrest without a warrant may stand if based on probable cause. (*Go-Bart Co.* v. *United States* (1931) 282 U.S. 344, 356 [75 L.Ed. 374, 382, 51 S.Ct. 153]; *Stallings* v. *Splain* (1920) 253 U.S. 339, 342 [64 L.Ed. 940, 942, 40 S.Ct. 537].)[1] In *Giordenello* v. *United States* (1958) 357 U.S. 480, 487 [2 L.Ed.2d 1503, 1510, 78 S.Ct. 1245], the government argued to the Supreme Court that "the arrest was justified *apart* from the warrant." The court held that, although the government could not urge probable cause as the basis for the legality of the arrest for the first time at this stage, "This is not to say, however, that in the event of a new trial the Government may not seek to justify petitioner's

---

[1] "[T]here was probable cause sufficient to support a warrantless arrest. Such an arrest is valid despite an invalid warrant. *Ferganchick* v. *United States,* 374 F.2d 559 (9th Cir. 1967); *Bell* v. *United States,* 371 F.2d 35 (9th Cir. 1967)." (*Dearinger* v. *United States* (9th Cir. 1967) 378 F.2d 346, 347, cert. den. 389 U.S. 885 [19 L.Ed.2d 183, 88 S.Ct. 156].) Other federal cases holding an arrest valid when based on probable cause, even though the arresting officer acted pursuant to an arrest warrant invalid under *Giordenello,* include: *United States* v. *Hall* (2d Cir. 1965) 348 F.2d 837, 841, cert. den. 382 U.S. 947 [15 L.Ed.2d 355, 86 S.Ct. 408]; *United States* v. *White* (4th Cir. 1965) 342 F.2d 379, 381-382, cert. den. 382 U.S. 871 [15 L.Ed.2d 109, 86 S.Ct. 148]; *Hagans* v. *United States* (5th Cir. 1963) 315 F.2d 67, 69, cert. den. 375 U.S. 826 [11 L.Ed.2d 58, 84 S.Ct. 68].

arrest without relying on the warrant." (*Id.* at p. 488 [2 L.Ed.2d at p. 1511].)

In the instant case the prosecution sought to justify the arrest of defendant independently of the warrant, and the trial court found that "there was probable cause [based on] all the evidence relating to the information [Officer] Del Coma had at the time of the arrest." The defendant here, unlike the petitioner in *Giordenello*, therefore, obtained ample notice that the prosecution did not rest the justification for the arrest solely on the warrant.

A search undertaken pursuant to an invalid search warrant which could otherwise be upheld as incident to an arrest based upon probable cause presents an analogous problem.[2] In sustaining the validity of such a search, the court in *People* v. *Castro* (1967) 249 Cal.App.2d 168, 174-175 [57 Cal.Rptr. 108], relied upon two reasons which equally apply to the instant issue: *"First*: Although certain nonwarrant arrests and searches are permissible, the policy of the law is to encourage officers to use search warrants. . . . *Second*: The rule which excludes evidence obtained by illegal searches was adopted [partially] for the purpose of eliminating the incentive for police officers to use illegal methods. [Citations.] . . . That principle does not call for a rejection of the evidence in this case. Here the officer was guilty of no wrongdoing except faulty draftsmanship. . . . Given a choice between a nonwarrant arrest and a search based upon a magistrate's warrant, officers will be impelled to forego the latter, if a defect in the warrant procedure will invalidate an arrest and search which would have been legal without a warrant."[3]

___

[2] In *Marron* v. *United States* (1927) 275 U.S. 192 [72 L.Ed. 321, 48 S.Ct. 74], the police officers conducted a search of defendant's business premises pursuant to a valid search warrant but seized items which were not specified by the warrant. After stating that "The requirement that warrants shall particularly describe the things to be seized makes general searches under them impossible and prevents the seizure of one thing under a warrant describing another" (*id.* at p. 196 [72 L.Ed. 237]), the Supreme Court held the seizure valid on the ground that the search by means of which the officers found the seized items was incident to the arrest of defendant's agent who was committing a crime on the premises in the presence of the officers. (See 275 U.S. at pp. 198-199 [72 L.Ed. at pp. 237-238].)

[3] "A contrary holding would turn law enforcement into a monstrous chess game in which the slightest tactical error by law enforcement officers could be fatal to the successful prosecution of a person accused of a heinous offense even though the intent, purposes and spirit of the Constitution had not been violated." (*People* v. *Grubb* (1967) 250 Cal. App.2d 714, 720 [58 Cal.Rptr. 670]; see also *People* v. *Tillman* (1965) 238 Cal.App.2d 134, 139 [47 Cal.Rptr. 614].)

Officer Del Coma had probable cause to arrest defendant on September 13 when he obtained a warrant for defendant's arrest for the burglary of the Money Vault and, pursuant to it, arrested defendant.[4] Moreover, no evidence even intimates that Del Coma procured the warrant in bad fatih or exploited the illegality of the warrant. (Contrast *Go-Bart Co.* v. *United States, supra,* 282 U.S. 344, 358 [75 L.Ed. 374, 383, 51 S.Ct. 153].) If Del Coma had been proceeding without a warrant in arresting defendant, the arrest would have been lawful. To invalidate the arrest here *solely* because the arresting officer first obtained a warrant supported by a constitutionally insufficient complaint would not further the policies of the Fourth Amendment but would subvert its preference for arrests and searches conducted pursuant to warrants.

## II.

The search of defendant's house and seizure of the coins and other numismatic items on September 13 constituted a "reasonable" search within the meaning of the Fourth Amendment. (*Ker* v. *California* (1963) 374 U.S. 23, 41 [10 L.Ed.2d 726, 742, 83 S.Ct. 1623]; *Agnello* v. *United States* (1925) 269 U.S. 20, 30 [70 L.Ed. 145, 148, 46 S.Ct. 4, 51 A.L.R. 409]; *People* v. *Cockrell* (1965) 63 Cal.2d 659, 667 [47 Cal.Rptr. 788, 408 P.2d 116].) Officer Del Coma acted reasonably in going to defendant's home to execute the warrant; the search was incident to an arrest based on probable cause, and only items which reasonably appeared to be connected with

---

[4]The trial court relied on the following evidence in finding that Officer Del Coma had probable cause to arrest defendant on September 13: Del Coma knew that defendant had been in the Money Vault on the morning of the burglary and that defendant had participated in negotiations to return the stolen coins; Del Coma had also talked to Ambrose, defendant's neighbor, a few days after the burglary, about defendant's statements relating to committing a burglary with someone named "Chuck," and to Parsons, the owner of another coin shop, to whom defendant had admitted his participation in the burglary of the Money Vault. Finally, Del Coma responded to the burglary call at the Money Vault on the morning of August 15, 1965, and presumably talked to Slocum about defendant's various incriminating and evasive conversations with him.

No problem arises from defendant's first arrest by Officer Del Coma on the earlier date of August 25, 1965. The only information which Del Coma acquired after that date involved the negotiations with Slocum and Parsons' report that defendant had admitted burglarizing the Money Vault. Del Coma had already talked to the neighbor Ambrose and the owner Slocum and knew that defendant was "looking around" the Money Vault the morning of the burglary. Del Coma therefore had probable cause to arrest defendant for the burglary on August 25. That defendant was released without being booked after his first trip to the police station cannot render his subsequent arrest on September 13 invalid.

the Money Vault burglary were seized. ■ That some of such items were subsequently identified as coins and medals stolen from the Pulati residence in February 1965 does not invalidate the search which produced them. Hence the coins and other numismatic items which the prosecution introduced into evidence were admissible.

### III.

■ We do not find that any prejudice resulted to defendant even if the court committed error in failing to strike count II after the magistrate at the preliminary hearing dismissed that count for lack of evidence and held defendant to answer only on the burglary counts, I and III.[5]

The error, if any, involved failure to comply with the requirements of article I, section 8, of the California Constitution and section 739 of the Penal Code. ■ A district attorney may, ''after examination and commitment by a magistrate'' (Cal. Const., art. I, § 8), file in the superior court an information charging an accused with an offense for which he has not been held to answer only if that offense was ''shown by the evidence taken before the magistrate to have been committed'' (Pen. Code, § 739) and ''arose out of the transaction which was the basis for the commitment'' on a related offense. (*Parks* v. *Superior Court* (1952) 38 Cal.2d 609, 614 [241 P.2d 521]; *People* v. *Warren* (1958) 163 Cal.App.2d 136, 141 [328 P.2d 858].)

■ The facts of the instant case satisfy the second requirement that the offense arise out of the same transaction which serves as the basis of the commitment, since count II charged defendant with concealing and withholding, in violation of section 496 of the Penal Code, property stolen from the Pulatis; that property was the subject of the second burglary count on which defendant was held to answer. The only issue here, therefore, turns on whether ''the evidence at the

[5]The complaint charged defendant with three crimes: first degree burglary of the Pulati residence on February 2, 1965 (count I), concealing and withholding stolen property on September 14, 1965 (count II), and second degree burglary of the Money Vault on August 14, 1965 (count III). At the preliminary hearing, the magistrate dismissed count II for lack of evidence and held defendant to answer on counts I and III. Defendant was arraigned in the superior court in October 29, 1965, on an information charging all three counts. The court denied defendant's motion under Penal Code section 995 to dismiss count II. Defendant pleaded not guilty to all three counts. At the close of the evidence the trial court granted the prosecution's motion to dismiss count II. The jury found the defendant guilty on counts I and III.

preliminary hearing [showed] probable cause for holding the [defendant] to stand trial on the charge of [violating section 496 of the Penal Code]." (*Parks* v. *Superior Court, supra,* 38 Cal.2d at p. 614.)

Although the committing magistrate found that "there is no evidence sufficient to hold the defendant to answer on count two," we need not pass upon the validity of this ruling. The trial court's error, if any, in declining to dismiss count II did not cause prejudice to defendant. (*People* v. *Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243].) Although the entire information was read to the jury, the defendant does not allege that the prosecution in any way improperly took advantage of the inclusion of count II in the information. The prosecution did not attempt to introduce any evidence that was not admissible under counts I or III. Since the prosecution moved, outside the presence of the jury, to dismiss count II at the close of the evidence, the trial court did not give any instructions relating to that count. In light of the overwhelming evidence of guilt, the mere reading of the information charging the second count to the jury cannot be deemed prejudicial.[6]

To sum up the main issue of this case, we do not believe that the search, which occurred incident to an arrest based upon probable cause, should be invalidated solely because of reliance upon a defective arrest warrant. If we were to rule otherwise, we would not only prevent the introduction of entirely proper evidence but also discourage officers from first presenting to a magistrate the evidence upon which they could later rely in establishing probable cause to justify an arrest and incidental search and seizure. Officers would very likely eschew the warrant that could both fall of its own weight and bring down with it the structure of an otherwise impeccable search and seizure.

The judgment is affirmed.

Traynor, C. J., and Sullivan, J., concurred.

McComb, J., Mosk, J., and Burke, J., concurred in the judgment.

---

[6]We need not decide whether three alleged instances of misconduct on the part of the prosecutor during his examination of certain witnesses, and the trial court's ruling relating to conclusions expressed by a fourth witness, constituted error. Even assuming error in all four alleged instances, their combined effect worked no prejudice in light of the overwhelming admissible evidence of guilt. (*People* v. *Watson, supra,* 46 Cal.2d at p. 836.)

PETERS, J.—I dissent.

In a well reasoned opinion we have held this very day that warrants identical to the ones used here are constitutionally defective, and that arrests pursuant thereto are invalid. (*People* v. *Sesslin, ante,* p. 418 [67 Cal.Rptr. 409, 439 P.2d 321].) The majority opinion concedes, as it must, that the warrants here are invalid because constitutionally defective. The arrests made pursuant to such warrants must, therefore, be held to be invalid.

The majority seek to uphold the arrests because, at the trial, the prosecution justified the arrests because the police had knowledge of sufficient facts to constitute probable cause. But the arrests were not based on that ground. The police purported to act solely upon the warrants. To permit them to justify the arrests at this late date on entirely different grounds unfairly prejudiced the defendant. He had the legal right to prepare and to base his defense on the invalidity of his arrest because of the constitutionally defective warrants. To compel him at the trial to meet a completely new justification for the arrests placed him at a serious disadvantage.

The police had the right to elect whether they should arrest defendant because they had probable cause to do so, or upon a warrant. They elected the latter alternative. Having made the arrest in a constitutionally defective manner they are bound by their election. Any other holding makes the securing and issuance of a warrant idle acts.

I would reverse the judgment.