STATE OF NEW JERSEY, PLAINTIFF-APPELLANT, v. ALLEN ROBERT SEISS, DEFENDANT-RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued April 3, 1979—Decided May 9, 1979.

Before Judges LYNCH, CRANE and HORN.

Mr. Jack L. Weinberg, Assistant Prosecutor, argued the cause for appellant (Mr. John B. Mariano, Camden County Prosecutor, attorney).

Ms. Irene Jones argued the cause for respondent (Mr. Stanley C. Van Ness, Public Defender, attorney).

The opinion of the court was delivered by
LYNCH, P. J. A. D. (retired, temporarily assigned). Leave having been granted, the State appeals from an order granting defendant's motion to suppress certain evidence seized when the police went to defendant's home to execute a warrant for his arrest on a motor vehicle violation.

On August 23, 1977 two officers of the Collingswood Police Department, Woshnak and Laub, saw defendant's vehicle parked outside his house. The officers apparently knew there was an outstanding warrant for defendant's arrest for nonpayment of a fine on a motor vehicle charge. The officers did not have the warrant in hand. Officer Laub knocked on defendant's door while Officer Woshnak stood in the driveway. Defendant answered. There was a screen door between defendant and Laub who was standing at the doorway. Laub informed defendant that there was a warrant for his arrest due to nonpayment of the traffic fine but did not demand admittance. See State v. Fair, 45 N. J. 77 (1965), and State v. Schelle, 126 N. J. Super. 596 (App. Div. 1974). Seiss told Laub to wait a minute while he went to get his wallet so that he could go with the officers and pay the fine. The screen door was still closed when defendant went to his dining room to get the wallet.

When defendant was in the dniing room he noticed that both officers had followed him there and were standing behind him. Officer Woshnak testifed that once in the dining room he saw two pipes, one with burnt marijuana residue, and he could smell marijuana smoke. The officers searched the dining room. They then went to the living room where

several guests were sitting. The officers observed a "roach"[1] end in an ashtray and smelled marijuana smoke. The officers then searched the kitchen, opening every drawer and cabinet. No contraband was found. Officer Laub noticed that the cellar door was ajar. He then went into the basement where he found a Mr. Burke at the far end of the basement. The officer then discovered 8½ pounds of marijuana in nine plastic bags which had been packed into a garbage can under the stairs.

The judge below suppressed the marijuana because he held that the initial entry into defendant's house was illegal. He rejected the State's arguments that defendant acquiesced in permitting the officers to enter the house. The judge expressly found that the State's claim that the officers' entrance into defendant's house was to make sure he did not escape was "not a realistic approach." There was no evidence that defendant was attempting to escape or that the officers were apprehensive that he might escape. Nor were they concerned for their personal safety.

The evidence involved here was seized in two different parts of defendant's home: (1) on the first floor (pipes, "roach"), and (2) in the basement (8½ pounds of marijuana). Each area should be considered separately because different principles of search and seizure law are relevant to each respective area.

## I

### *The search of the first floor.*[2]

█ It was well established that a warrantless search is in itself invalid unless it falls within a specific exception to

---

[1]At one point the officers testified that two "roaches" were found in the house.

[2]Since the validity of this search depends on the right of the police to be in the house, suppression of the evidence seized there would necessarily require suppression of all evidence seized in the house on the first floor and also the basement.

the warrant requirement. *Katz v. United States,* 389 *U. S.* 347, 357, 88 *S. Ct.* 507, 19 *L. Ed.* 2d 576 (1967); *State v. DeLorenzo,* 166 *N. J. Super.* 483 (App. Div. 1979). And it is the State's burden to establish that its action comes within an exception. *United States v. Jeffers,* 342 *U. S.* 48, 51, 72 *S. Ct.* 93, 96 *L. Ed.* 59 (1951); *State v. Sims,* 75 *N. J.* 337, 351–352 (1978); *State v. King,* 84 *N. J. Super.* 297, 300 (App. Div. 1964), rev'd on other grounds 44 *N. J.* 346 (1965); *Chimel v. California,* 395 *U. S.* 752, 762, 89 *S. Ct.* 2034, 23 *L. Ed.* 2d 685 (1969).

The evidence seized on the first floor was in "plain view" of the officers as they went into defendant's home. Thus, if the officers had a right to enter the home, there would be no impropriety in seizing the evidence on the first floor. But the question is whether indeed the officers had a right to be in the dining room and living room where they seized the pipes and "roach."

■ Ordinarily the police may enter a home to effect an arrest. But this rule, too, as in all situations of search and seizure, is to be measured by the rule of reasonableness. That concept has recently been refined to a dual standard of (1) whether the police acted in good faith in making a search incident to a lawful arrest and (2) whether there existed a "substantial police need" for the action they have taken. *State v. Slockbower,* 79 *N. J.* 1 (1979); *State v. Ercolano,* 79 *N. J.* 25 (1979). In other words, if a search is unnecessary for the attainment of a lawful police objective, it is illegal. In *Slockbower,* while defendant was driving his wife's van he was arrested on an outstanding warrant for driving a motor vehicle while on the revoked list. The vehicle was impounded and immediately searched. The search turned up a pen gun and ammunition, and defendant was charged with and indicted for statutory criminal violations in that regard. Though his arrest on the outstanding warrant was clearly valid, the Supreme Court suppressed that evidence on the ground that the impoundment of the car

was unnecessary for any police purpose. As the court said in *Slockbower*:

> The point to be made is that constitutional rights to privacy in vehicles and effects must be accorded respect by police as well as courts and cannot be subordinated to mere considerations of convenience to the police *short of substantial necessities grounded in the public safety. The burden of establishing such necessity in any given case of claimed right to impound and inventory a car rests on the police.* As aptly put in *Chimel v. California*, 395 *U. S.* 752, 764–765, 89 *S. Ct.* 2034, 2041, 23 *L. Ed.* 2d 685 (1969), the 'reasonableness' of a search is to be assayed on considerations 'relevant to Fourth Amendment interests,' not on 'a subjective view regarding the acceptability of certain sorts of police conduct.' Any contrary approach would create a temptation for police to use the unconnected temporary predicament of a motorist as a pretext for an investigatory search unauthorized by a warrant. [at 12; emphasis supplied]

See also, *State v. Ercolano, supra,* 79 *N. J.* at 33.

█ Just as there was no "substantial necessity" to impound the car in *Slockbower,* so here there was no "substantial necessity" to enter defendant's home in order to arrest him. Defendant was placed under arrest as the police stood outside the screen door. As we have said, the motion judge found that the State's contention that the entry into the house was for the purpose of making sure that defendant would not escape was not supported. And the officers had no reason to believe that he might escape. This was not a case where defendant was about to be arrested for a serious crime which might have motivated an attempt to escape. He was arrested for failing to pay a fine for a traffic violation. Compare, *State v. Brown,* 132 *N. J. Super.* 180 (App. Div. 1975). Nor were the officers apprehensive about their safety. And the motion judge accepted defendant's version of the fact that he turned from the screen door to get the money to pay the fine, and not to evade arrest.

██ *Slockbower* and *Ercolano* involved searches of automobiles which may be subjected to warrantless searches or seizures more readily than residences. 68 *Am. Jur.* 2d,

*Searches and Seizures,* § 16, at 673, 674 (1973). See *Carroll v. United States,* 267 U. S. 132, 45 S. Ct. 280, 69 L. Ed. 543 (1925); *Chambers v. Maroney,* 399 U. S. 42, 90 S. Ct. 1975, 26 L. Ed. 2d 419 (1970); *Coolidge v. New Hampshire,* 403 U. S. 443, 91 S. Ct. 2022, 29 L. Ed. 2d 564 (1971); *United States v. Santana,* 427 U. S. 38, 96 S. Ct. 2406, 49 L. Ed. 2d 300 (1976). There is a special reverence of the law for the individual's right of privacy in his home. *Miller v. United States,* 357 U. S. 301, 313, 78 S. Ct. 1190, 2 L. Ed. 2d 1332 (1958). The search of a private dwelling without a warrant is itself unreasonable and "abhorrent to our laws." *Agnello v. United States,* 269 U. S. 20, 32, 46 S. Ct. 4, 70 L. Ed. 145 (1925).

As said in *Silverman v. United States,* 365 U. S. 505, 81 S. Ct. 679, 5 L. Ed. 2d 734 (1961):

The Fourth Amendment, and the personal rights it secures, have a long history. At the very core stands the right of a man to retreat into his own home and there be free from unreasonable governmental intrusion. [at 511, 81 S. Ct. at 683]

And in *Johnson v. United States,* 333 U. S. 10, 68 S. Ct. 367, 92 L. Ed. 436 (1948):

The right of officers to thrust themselves into a home is also a grave concern, not only to the individual but to a society which chooses to dwell in reasonable security and freedom from surveillance. [at 14, 68 S. Ct. at 369]

Thus we have no hesitancy in extending the *Slockbower* rule (necessity of a factual showing of a substantial police need for search of an automobile), to the situation here where the police invaded defendant's home without any necessity for doing so. This conclusion is supported by the trial judge's finding that there was no evidence that defendant attempted to flee and that the only reason he went into the interior of the house was to get his wallet to pay the fine for the traffic offense. Just as in *Slockbower* and *Erco-*

*lano* there was no necessity for invading the automobiles in order to fulfill a police purpose, so there was none here for invading defendant's home for such a purpose. Rather, it appears the police invaded defendant's home merely for the purpose of conducting an exploratory search. *State v. Ercolano, supra,* 79 *N. J.* at 39; *State v. Doyle,* 42 *N. J.* 334, 342 (1964).

Even if the initial entry into defendant's house could be justified for the purpose of taking defendant in custody, there still remains a further question as to whether the police could explore and search the interior of the house.

In *Vale v. Louisiana,* 399 *U. S.* 30, 90 *S. Ct.* 1969, 26 *L. Ed.* 2d 409 (1970), police officers possessing two warrants for arrest of defendant arrested him at the steps of his house. Having observed what they considered a narcotics transaction by defendant, the officers advised him that they were going to search his house. They entered the building and, after a cursory inspection to see if anyone else was present, a search of a rear bedroom revealed a quantity of narcotics. The Louisiana Supreme Court sustained the search and seizure because it occurred "in the immediate vicinity of the arrest" and was "substantially contemporaneous therewith * * *." *State v. Vale,* 252 *La.* 1056, 1070, 215 *So.* 2d 811, 816 (1968). The United States Supreme Court reversed, saying:

Last Term in *Chimel v. California,* 395 *U. S.* 752, 89 *S. Ct.* 2034, 23 *L. Ed.* 2d 685, we held that when the search of a dwelling is sought to be justified as incident to a lawful arrest, it must constitutionally be confined to the area within the arrestee's reach at the time of his arrest — "the area from within which he might gain possession of a weapon or destructible evidence." 395 *U. S.* at 763, 89 *S. Ct.* at 2040 [23 *L. Ed.* 2d at 694.] But even if *Chimel* is not accorded retroactive effect — a question on which we do not now express an opinion — no precedent of this Court can sustain the constitutional validity of the search in the case before us.

A search may be incident to an arrest " 'only if it is substantially contemporaneous with the arrest and is confined to the *immediate* vicinity of the arrest.' " *Shipley v. California,* 395 *U. S.* 818, 819, 89 *S. Ct.* 2053, 23 *L. Ed.* 2d 732 [734;] *Stoner v. California,* 376

*U. S.* 483, 486, 84 *S. Ct.* 889, 891, 11 *L. Ed.* 2d 856 [858,]. If a search of a house is to be upheld as incident to an arrest, that arrest must take place *inside* the house, cf. *Agnello v. United States,* 269 *U. S.* 20, 32, 46 *S. Ct.* 4, 6, 70 *L. Ed.* 145 [148,] 51 *A. L. R.* 409,] not somewhere outside — whether two blocks away, *James v. Louisiana,* 382 *U. S.* 36, 86 *S. Ct.* 151, 15 *L. Ed.* 2d 30, twenty feet away, *Shipley v. California,* supra, or on the sidewalk near the front steps. "Belief, however well founded, that an article sought is concealed in a dwelling house furnishes no justification for a search of that place without a warrant." *Agnello v. United States,* supra, 269 *U. S.* at 33, 46 *S. Ct.* at 6 [70 *L. Ed.* at 149, 51 *A. L. R.* 409]. That basic rule "has never been questioned in this Court." *Stoner v. California,* supra, 376 *U. S.* at 487, n. 5, 84 *S. Ct.* at 892 [11 *L. Ed.* 2d at 859] [399 *U. S.* at 33–34, 90 *S. Ct.* at 1971–72]

\* \* \*

\* \* \* our past decisions make clear that only in "a few specifically established and well-delineated" situations, *Katz v. United States,* 389 *U. S.* 347, 357, 88 *S. Ct.* 507, 19 *L. Ed.* 2d 576 [585] may a warrantless search of a dwelling withstand constitutional scrutiny, even though the authorities have probable cause to conduct it. The burden rests on the State to show the existence of such an exceptional situation. [citing cases] [399 *U. S.* 34, 90 *S. Ct.* at 1972]

\* \* \*

There is no suggestion that anyone consented to the search. \* \* \* The officers were not responding to an emergency. \* \* \* They were not in hot pursuit of a fleeing felon. \* \* \* The goods ultimately seized were not in the process of destruction. \* \* \* Nor were they about to be removed from the jurisdiction. [citing cases]. [399 *U. S.* at 35, 90 *S. Ct.* at 1972]

While *Vale, supra,* 399 *U. S.* 30, 90 *S. Ct.* 1969, 26 *L. Ed.* 2d 409 is somewhat distinguishable on its facts from those here in that defendant was told he was under arrest at the front steps of his house whereas defendant Seiss was so told while inside the screen door, the decision is nevertheless relevant here. The search here was not confined to the immediate vicinity of the arrest. The police went into and through the living room, dining room and kitchen of the first floor and ultimately the basement. In the living room they saw one "roach," and on the dining room table a pipe with residue of burnt marijuana. They opened the doors of a china closet where they found a pipe with nothing in it. In the kitchen they opened all the drawers and cabinets but

found nothing. Finally, they went to the basement and there found 8½ pounds of marijuana. Since the arrest was not made *inside* the house but "somewhere outside," a search of the house as incident thereto cannot be upheld. *Agnello v. United States, supra,* 269 U. S. 20, 46 S. Ct. 4, 70 L. Ed. 145. And as the court said in *Shipley v. California,* 395 U. S. 818, 89 S. Ct. 2053, 23 L. Ed. 2d 732 (1969):

> [But] the Constitution has never been construed by this Court to allow police, in the absence of an emergency, to arrest a person *outside* his home and then take him inside for the purpose of conducting a warrantless search. [at 820, 89 S. Ct. at 2054-55]

There was no evidence of an "emergency" here, as expressly found by the trial judge. Recalling that it is the State's burden to prove the existence of an exception to the warrant rule and the need for it in order to sustain a warrantless search of a home, *Chimel v. California, supra,* 395 U. S. 752 at 762, 89 S. Ct. 2034, 23 L. Ed. 2d 685; *State v. Sims, supra,* 75 N. J. 337 at 352, we conclude that the search of defendant's home was in all respects invalid.

## II

*The search and seizure in the basement.*

Even if the search of the living room, dining room and kitchen on the first floor were to be sustained, the search of the basement, as a separate consideration, was clearly invalid and the 8 1/2 pounds of marijuana found there must be suppressed. *Chimel v. California,* 395 U. S. 752, 89 S. Ct. 2034, 23 L. Ed. 2d 685 (1969), is on all fours with this case insofar as the seizure of the marijuana found in the basement is involved and is demonstrative of the illegality of the search as extended to that area.

In *Chimel* defendant was arrested as he entered his home where three police officers having a warrant for his arrest on a charge of burglary were awaiting him. No search warrant

had been obtained. The officers then looked through the entire three bedroom house including the attic, garage and small workshop, the master bedroom and sewing room. They seized numerous items, including coins, medals and other items. At defendant's trial the seized items were admitted into evidence and he was convicted. The conviction was affirmed by both the California Court of Appeal, 61 *Cal. Rptr.* 714, and Supreme Court, 68 *Cal.* 2d 436, 67 *Cal. Rptr.* 421, 439 *P.* 2d 333 (1968). The United States Supreme Court reversed, holding that since the search of defendant's home went far beyond his person and the area from which he might have obtained either a weapon or evidence that could have been used against him, there was no constitutional justification, in the absence of a search warrant, for extending the search beyond that area. The scope of the search was held to be unreasonable under the Fourth and Fourteenth Amendments, and defendant's conviction could not stand. Mr. Justice Stewart, speaking for six members of the court, quoted from *Trupiano v. United States,* 334 *U. S.* 699, 68 *S. Ct.* 1229, 92 *L. Ed.* 1663 (1948), where it was said:

"A search or seizure without a warrant as an incident to a lawful arrest has always been considered to be a strictly limited right. It grows out of the inherent necessities of the situation at the time of the arrest. But there must be something more in the way of necessity than merely a lawful arrest." Id., at 705, 708, 68 *S. Ct.* at 1232, 1234, 92 L Ed at 1669, 1671. [*Chimel v. California, supra,* 395 *U. S.* at 759, 89 *S. Ct.* at 2038]

And further:

Clearly, the general requirement that a search warrant be obtained is not lightly to be dispensed with, and "the burden is on those seeking [an] exemption [from the requirement] to show the need for it * * *." *United States v. Jeffers,* 342 *U. S.* 48, 51, 72 *S. Ct.* 93, 96 *L. Ed.* 59, 64. [*Id.* at 762, 89 *S. Ct.* at 2039]

Mr. Justice Stewart went on:

When an arrest is made, it is reasonable for the arresting officer to search the person arrested in order to remove any weapons that the

latter might seek to use in order to resist arrest or effect his escape. Otherwise, the officer's safety might well be endangered, and the arrest itself frustrated. In addition, it is entirely reasonable for the arresting officer to search for and seize any evidence on the arrestee's person in order to prevent its concealment or destruction. And the area into which an arrestee might reach in order to grab a weapon or evidentiary items must, of course, be governed by a like rule. A gun on a table or in a drawer in front of one who is arrested can be as dangerous to the arresting officer as one concealed in the clothing of the person arrested. There is ample justification, therefore, for a search of the arrestee's person and the area "within his immediate control" — construing that phrase to mean the area from within which he might gain possession of a weapon or destructible evidence.

There is no comparable justification, however, for routinely searching any room other than that in which an arrest occurs — or, for that matter, for searching through all the desk drawers or other closed or concealed area in that room itself. Such searches, in the absence of well-recognized exceptions, may be made only under the authority of a search warrant. The "adherence to judicial processes" mandated by the Fourth Amendment requires no less.

This is the principle that underlay our decision in *Preston v. United States*, 376 *U. S.* 364, 84 *S. Ct.* 881, 11 *L. Ed.* 2d 777. In that case three men had been arrested in a parked car, which had later been towed to a garage and searched by police. We held the search to have been unlawful under the Fourth Amendment, despite the contention that it had been incidental to a valid arrest. Our reasoning was straightforward.

"The rule allowing contemporaneous searches is justified, for example, by the need to seize weapons and other things which might be used to assault an officer or effect an escape, as well as by the need to prevent the destruction of evidence of the crime — things which might easily happen where the weapon or evidence is on the accused's person or under his immediate control. But these justifications are absent where a search is remote in time or place from the arrest." Id., at 367, 84 *S. Ct.* at 883, [11 *L. Ed.* 2d at 780.] [*Id.* at 762–764, 89 *S. Ct.* at 2040]

Mr. Justice Stewart concluded:

Application of sound Fourth Amendment principles to the facts of this case produces a clear result. The search here went far beyond the petitioner's person and the area from within which he might have obtained either a weapon or something that could have been used as evidence against him. [*Id.* at 768, 89 *S. Ct.* at 2043]

Since the search in the basement went far beyond defendant's person and the area within which he might have obtained a weapon or destroyed evidence, the 8 1/2 pounds of marijuana seized there must be suppressed.

*State v. Smith,* 140 *N. J. Super.* 368 (App. Div. 1976), aff'd o. b. 75 *N. J.* 81 (1977), is not to the contrary. *Smith* stands for the proposition that:

> A protective or "fan out" search is justified by the need for the police to make sure no third parties are present who might endanger them. It follows, of course, that if such persons are found, the police may take reasonable measures to avert any physical threats of harm. Such steps would sanction the frisking of any persons who are found, *Terry v. Ohio,* 392 *U. S.* 1, 88 *S. Ct.* 1868, 20 *L. Ed.* 2d 889 (1968), as well as the confiscation of evidence in plain view, *e. g., Harris v. United States,* 390 *U. S.* 234, 88 *S. Ct.* 992, 19 *L. Ed.* 2d 1067 (1968) ; *Ker v. California,* 374 *U. S.* 23, 83 *S. Ct.* 1623, 10 *L Ed.* 2d 726 (1963). Also permitted would be a search of areas within the immediate control of those third parties, and a search of such areas, as in *Chimel* itself, may be directed to weapons not in plain view. See *United States v. Manarite,* 314 *F. Supp.* 607 (S. D. N. Y. 1970), aff'd 448 *F.* 2d 448 (2 Cir. 1971). [140 *N. J. Super.* at 373]

However, *Smith* does not support the action taken by the police officer herein when he conducted a full-blown search of the basement.

In *Smith* the officers went to the home of a Shirl Bouier in order to execute an arrest warrant for one Marvin Higgins for armed robbery. Upon entering the apartment the officers found Higgins and two other persons in and near the living room with six bags of narcotics, a cooker and glassine envelopes. The officers went to the bedroom of the house, which was located on the same floor. The door was open. In the bed, Ms. Bouier and defendant were asleep. The officers told Bouier and Smith to get dressed. One officer entered the room and picked up a .22-caliber revolver "in or on the dresser." Smith sought to suppress the gun as evidence.

The court found that the "fan out" search in *Smith* was justified to make sure there was no third parties who could

endanger the officers. The officers were thrust into a situation which created a "risk to the[ir] safety." 140 *N. J. Super.* at 373. Higgins was sought for armed robbery; there were two other persons apparently engaged in serious drug trafficking in the apartment, and the owner of the apartment was not visible. Therefore, the officers were justified in searching for other persons on the premises in order to protect themselves. Once those persons were located, a search of areas within their immediate control in order to find weapons not in plain view may be carried out.

In *Seiss,* however, the officers were not thrust into a situation which created a risk to their safety. They were there to execute an arrest warrant for nonpayment of a motor vehicle fine, hardly suggesting possibility of harm such as in *Smith* when the officers went to the house to arrest an armed robber. There was no visible evidence of drug trafficking. Rather, the contraband consisting of a "roach" and burnt marijuana residue in a pipe was evidence of personal drug use. The officer went into the basement without any reasonable cause to believe there were third persons who might endanger his safety. Compare, *State v. Miller,* 126 *N. J. Super.* 572 (App. Div. 1974), where the officers heard "creaking" overhead justifying their exploration of the attic. Although the officer here did find a third person, Burke, at the far end of the basement, the officer searched him and sent him upstairs. The officer thus extinguished any threat to his safety by sending Burke upstairs. Only then was the search of the basement begun. The search was full-blown and not limited to the area where Burke had been. The 8 1/2 pounds of marijuana were then found under the stairway. Thus, the search in the case at bar exceeded the scope of the permissible search allowed in *Smith.*

### Conclusion.

The order suppressing the evidence seized in defendant's home is affirmed.