[Crim. No. 4286.   First Dist., Div. Two.   Mar. 16, 1965.]

THE PEOPLE, Plaintiff and Respondent, v. JOSEPH ROD-
RIQUEZ SALDANA, Defendant and Appellant.

Joseph Rodriguez Saldana, in pro. per., and David C. Marcus for Defendant and Appellant.

Stanley Mosk and Thomas C. Lynch, Attorneys General, Albert W. Harris, Jr., John F. Kraetzer and James Murad, Deputy Attorneys General, for Plaintiff and Respondent.

SHOEMAKER, J.—Appellant Joseph Saldana was charged by information with forcible rape, in violation of Penal Code, section 261, subdivision 3; and possession of marijuana, in violation of Health and Safety Code, section 11530. After a trial by jury, appellant was found guilty of rape and not guilty of possession of marijuana. He prosecutes this appeal from the judgment accordingly entered.

Shortly before 2 a.m. on the morning of April 19, 1962, Theresa Ferreira left a Redwood City tavern known as Ray's Place and walked to her home, which was located some 2 blocks away, at 532 MacArthur Street. Mrs. Ferreira opened the gate to her front yard and walked to her front door, which was located in the carport. As she opened her purse to get out her key, she heard footsteps behind her, and, upon turning, recognized appellant Saldana, whom she had seen earlier at Ray's Place. Mrs. Ferreira ordered him to leave her yard and threatened to call the police, but appellant refused to do so and asked her who was at home. When Mrs. Ferreira told him that her brother and children were at home, appellant came toward her and struck her on the side of the head. Although

Mrs. Ferreira screamed and struggled with appellant, he ultimately forced her down on a couch located inside the carport near the front door. After threatening to kill her if she screamed again, appellant had sexual intercourse with her. Upon completing the act, appellant observed an approaching police car, got up and ran around the right side of the house.

Louis Paglierani and Owen Bell, two deputy sheriffs for the County of San Mateo, had been on routine patrol on the early morning of April 19, when they received a radio call, shortly after 2 a.m., that a woman was screaming for help at 532 MacArthur Street in Redwood City. They immediately drove to that address, arriving at approximately 2:15 or 2:30 a.m., and found Mrs. Ferreira seated on a couch at the front of the residence. Mrs. Ferreira was crying and appeared to be hysterical and somewhat incoherent. When questioned by the two deputies, she stated that she had been raped, but was unable to provide a detailed description of her assailant. She stated only that she had seen him before at Ray's Place, that he had dark hair, but that she did not know his name.

Following a fruitless search of the area surrounding the Ferreira house, Deputies Paglierani and Bell drove Mrs. Ferreira to Sequoia Hospital, where a vaginal smear was taken and found to contain motile sperm. The two deputies then contacted the owner of Ray's Place but were unsuccessful in obtaining any further information as to the identity of Mrs. Ferreira's assailant. They then drove to the home of Wayne King, the bartender at Ray's Place, and told him of the general description which Mrs. Ferreira had given of her attacker. King stated that appellant Saldana fitted the description and that he had left the tavern immediately after Mrs. Ferreira. King then accompanied Deputies Paglierani, Bell, White and Pinoti to Florence Street in Redwood City, where he pointed out the residence where he believed appellant lived.

Deputies Paglierani and White then knocked on the front door while Bell and Pinoti stationed themselves at the front and back of the house. The door was opened by a woman who admitted the two deputies to the house and directed them to appellant's bedroom. Upon entering the bedroom, they awakened appellant, who was asleep in bed. After appellant had identified himself, he was placed under arrest for rape. Bell and Pinoti then entered the bedroom, and appellant was asked what clothes he had worn on the evening of April 18. Although there were various articles of clothing scattered about the room and appellant was at first unwilling to indicate which

of them he had worn on the preceding evening, the question was repeated several times and appellant ultimately identified a particular pair of pants and a shirt. These items were taken into custody by Deputy Bell. In response to other questions concerning his connection with the Ferreira assault, appellant steadfastly denied any involvement. When asked how he had obtained two fresh scratches on his forehead, he stated only that he had been in a fight.

Sometime between 5 and 6 a.m., appellant was taken to the county jail, where he was subsequently booked for rape. When questioned shortly after his arrival at the jail, appellant asked permission to call his attorney, but was not allowed to do so. Appellant was then placed in a lineup and identified by Mrs. Ferreira as her assailant. At 8:30 or 9 a.m., appellant was shown the pants and shirt which he had identified earlier, and he again admitted that he had worn them on the evening of April 18 and the early morning of April 19. Prior to making this admission, appellant was informed that anything he said might be used against him, but was still not permitted to call an attorney.

On April 26, 1962, the clothing which had been identified by appellant was examined by a criminologist, and a seminal stain of fairly recent origin was found on the fly of the pants. The shirt was covered with blue fibers which were of the same type and color as the sweater worn by Mrs. Ferreira at the time of the attack.

On the morning of April 27, 1962, the criminologist again had occasion to examine the shirt identified by appellant and found a marijuana cigarette in the pocket. Appellant was immediately so informed, but denied all knowledge of how the cigarette came to be in the pocket. He was also questioned as to the seminal stain on the pants and stated that he had had intercourse with an unidentified woman two or three days prior to his arrest. When again asked about the scratches on his face, he stated that he and two companions had driven to a San Carlos drive-in, where they had become involved in a fight. The companions were known to him as "Henry" and "Jerry," and he thought that the last name of one was "Lopez."

The criminologist testified that the shirt in which the cigarette was found had been lying in the laboratory in a bag from April 19 to April 27, and that a considerable number of people had access to the laboratory.

The criminologist's findings, together with appellant's ad-

mission that he had worn the clothing in question on the evening of April 18 and the morning of April 19, were admitted into evidence as part of the prosecution's case.

Appellant, testifying in his own behalf, stated that he had been at Ray's Place continually from 9 p.m. on the evening of April 18, 1962, until shortly after 2 a.m. on the morning of April 19, 1962. Sometime during the evening, he played a pinball bowling game with the bartender, Mrs. Ferreira, and a man named Cortez, for an hour to an hour and one-half. Although he had seen Mrs. Ferreira in the tavern before, he only spoke to her once during the course of the evening. He saw her leave the tavern at approximately 2 a.m., and a few minutes later King, the bartender, asked him to lock the door. He went to the door, looked out, and saw two men known to him as Henry Lopez and Jerry outside in a car. He immediately left the bar and suggested that the three of them drive to a restaurant in San Carlos. Upon arriving at the restaurant, which turned out to be closed, appellant and his two companions became involved in a fight with three or four unidentified persons. Appellant was then driven home by his two companions. He went to bed and slept until he was awakened by the sheriff's deputies at 4 or 4:30 a.m.. He denied that he had raped Mrs. Ferreira or that the marijuana cigarette was his.

Appellant contends that the filing of the information charging him with rape and possession of marijuana was in violation of article I, section 8, of the California Constitution because the latter offense was not charged in the complaint and was totally unrelated and unconnected with the offense of rape which was charged in the commitment order. Appellant further asserts, upon the same reasoning, that it was error to deny his motion to sever the two counts charged in the information. We agree with both contentions.

Article I, section 8, of the California Constitution provides that ''Offenses heretofore required to be prosecuted by indictment shall be prosecuted by information, after examination and commitment by a magistrate, or by indictment, with or without such examination and commitment, as may be prescribed by law.''

Penal Code, section 739, provides that ''When a defendant has been examined and committed, as provided in section 872, it shall be the duty of the district attorney of the county in which the offense is triable to file in the superior court of that county within 15 days after the commitment, an information against the defendant which may charge the defendant with

either the offense or offenses named in the order of commitment *or any offense or offenses shown by the evidence taken before the magistrate to have been committed."* (Italics added.)

Although the above-quoted statute contains extremely broad language, it must be construed in connection with the constitutional provision, and the courts have accordingly held that an information would be contrary to the Constitution if it designated a crime or crimes unrelated to or unconnected with the transaction which was the basis for the commitment order. In the leading case of *People* v. *Bird* (1931) 212 Cal. 632 [300 P. 23], the court held that the crime of murder, as charged in the information, was sufficiently related, to the crime of manslaughter, upon which the commitment order was based, but pointed out that the situation would be entirely different "if the defendant should be complained against for grand theft and be informed against for bigamy, . . ." (p. 644). The most recent expression of this rule is found in *Mulkey* v. *Superior Court* (1963) 220 Cal.App.2d 817, 821 [34 Cal.Rptr. 121], where the court stated: " . . . the presently prevailing test laid down by the Supreme Court to determine validity of additional charges in the information is whether there is some 'transactional' relationship which relates or connects the added charges and the crimes listed in the commitment order. [Citations.]"

▇▇▇▇ The evidence presented at the preliminary hearing in support of the order committing appellant for rape did indicate that a marijuana cigarette was found in clothing worn by appellant on the night of the rape. However, the clear inference that appellant was in possession of marijuana at the time he committed the rape falls far short of establishing any causal connection or "transactional" relationship between the two crimes. It follows that appellant was prosecuted by information for the crime of possession of marijuana in violation of article I, section 8, of the California Constitution. (*Mulkey* v. *Superior Court, supra,* at pp. 825-826.)

▇▇▇▇ Moreover, the record reveals that prior to entering a plea of not guilty to the two offenses charged in the information, appellant moved to dismiss the information under Penal Code, section 995, and, upon the denial of this motion, moved to sever the two counts charged. Since the trial court presumably reviewed the transcript of the preliminary hearing in passing upon the former motion, it must have been aware that the only evidence connecting the two offenses charged was

the finding of the cigarette in clothing worn by appellant at the time of the rape. Such a showing clearly did not constitute a sufficient basis for consolidation under Penal Code, section 954, which provides in relevant part as follows: "An accusatory pleading may charge two or more different offenses connected together in their commission, or different statements of the same offense or two or more different offenses of the same class of crimes or offenses, under separate counts, and if two or more accusatory pleadings are filed in such cases in the same court, the court may order them to be consolidated. . . .[P]rovided, that the court in which a case is triable, in the interests of justice and for good cause shown, may in its discretion order that the different offenses or counts set forth in the accusatory pleading be tried separately or divided into two or more groups and each of said groups tried separately."

Respondent tacitly concedes that the two offenses with which appellant was charged were not different statements of the same offense nor different offenses of the same class of crimes or offenses. He asserts only that the trial court was entitled to conclude that the two offenses were connected together in their commission because the information alleged that both were committed on the same day. Although neither party has cited any authority directly in point, logic supports the inference that the Legislature did not intend the phrase "two or more different offenses connected together in their commission" to apply to two wholly unrelated crimes merely because they were committed on the same day or even, as in the present case, at the same time. (See *People* v. *Renier* (1957) 148 Cal. App.2d 516 [306 P.2d 917], where the court held that it was error to consolidate for trial two informations charging robbery and violation of Vehicle Code, section 503 (theft and unlawful driving or taking of a vehicle) even though both offenses were committed on the same day and the gun used in the robbery was found in the stolen vehicle.) We are convinced that the trial court erred in denying appellant's motion to sever the two counts charged in the information.

The question remaining is whether the invalidity of joining the count for possession of marijuana with the rape charge, and the erroneous failure to order that offense tried separately from the rape charge, entitles appellant to a reversal of the judgment convicting him of the latter offense. It has frequently been held that even though two cases are erroneously consolidated for trial, a reversal will not be had unless there is such a miscarriage of justice as would violate article VI,

section 4½ of the California Constitution. (*People* v. *Fox* (1958) 157 Cal.App.2d 426, 430 [321 P.2d 103]; *People* v. *Renier, supra,* at p. 520, and cases therein cited.) ■ In the case at bench, the evidence of appellant's guilt of the rape charge was overwhelming. Moreover, the jury acquitted him of possession of marijuana, having apparently concluded that the marijuana cigarette was not in the pocket of his shirt at the time it was taken into the custody of the police. Under such circumstances, we are satisfied that the consolidation of the charges for trial could not have resulted in substantial prejudice to appellant or in a miscarriage of justice.

■ Appellant next contends that he was deprived of due process by virtue of the police having interrogated him in connection with the rape charge without first informing him of his right to counsel and his right to remain silent. This contention is meritorious.

In *Escobedo* v. *Illinois* (1964) 378 U.S. 478, 490-491 [84 S.Ct. 1758, 12 L.Ed.2d 977], the Supreme Court held that "where . . . the investigation is no longer a general inquiry into an unsolved crime but has begun to focus on a particular suspect, the suspect has been taken into police custody, the police carry out a process of interrogations that lends itself to eliciting incriminating statements, the suspect has requested and been denied an opportunity to consult with his lawyer, and the police have not effectively warned him of his absolute constitutional right to remain silent, the accused has been denied 'the Assistance of Counsel' in violation of the Sixth Amendment to the Constitution as 'made obligatory upon the States by the Fourteenth Amendment,' . . . and that no statement elicited by the police during the interrogation may be used against him at a criminal trial."

In *In re Lopez* (1965) 62 Cal.2d 368, 371 [42 Cal.Rptr. 188, 398 P.2d 380], our Supreme Court, referring to *People* v. *Dorado* (1965) 62 Cal.2d 338 [42 Cal.Rptr. 169, 398 P.2d 361], stated that "a defendant's confession could not properly be introduced into evidence if (1) the investigation was no longer a general inquiry into an unsolved crime but had begun to focus on a particular suspect, (2) the suspect was in custody, (3) the authorities had carried out a process of interrogations that lent itself to eliciting incriminating statements, (4) the authorities had not effectively informed defendant of his right to counsel or of his absolute right to remain silent, and no evidence established that he had waived these rights."

There is no doubt that the investigation had focused on appellant when the deputies entered his house and placed him under arrest, and that the interrogation which followed was of the type to elicit incriminating statements. Although appellant was at first unwilling to state what clothes he had worn at the time of the Ferreira assault, he finally identified the shirt and pants which were admitted into evidence at the trial. The record contains no evidence that appellant was ever informed of his right to counsel. Appellant subsequently asked permission to call his attorney, after arriving at the county jail, but was not allowed to do so. Instead, he was subjected to further interrogation and again admitted that on the evening of April 18 and the morning of April 19 he had worn the clothes which he had previously identified. In view of the findings thereafter made by the criminologist, it is apparent that appellant's admission was of an incriminating nature. It is also apparent that the interrogation conducted in appellant's house was in violation of the rule laid down in *People* v. *Dorado, supra,* and that the further interrogation conducted at the county jail was in violation of the rule espoused in *Escobedo* v. *Illinois, supra.*

It does not follow, however, that reversal of the judgment is required. In *People* v. *Dorado, supra,* at page 356, the court stated that although the introduction into evidence of a *confession* obtained during police interrogation, in violation of the defendant's right to counsel and his right to remain silent, was necessarily prejudicial, the introduction into evidence of *statements* so obtained might, under some circumstances, constitute harmless error. In the instant case, appellant steadfastly denied any involvement in the Ferreira assault and admitted only that he had worn certain clothing on the night the assault occurred. Although this admission was used to connect defendant to the rape, a thorough review of the record leads to the conclusion that a different result would not have been likely in the absence of this admission. Mrs. Ferreira identified appellant as her assailant and stated that she had seen him earlier at Ray's Place. Her version of the attack was corroborated by the fact that she was heard screaming for help, was found by the police in an incoherent and hysterical condition, and a vaginal smear taken shortly thereafter disclosed motile sperm. Appellant admitted being present at Ray's Place until closing time, and his version of the events which occurred after he left the tavern was totally uncorroborated. When arrested by the police, he had two fresh scratches on his face. In view of the overwhelming

weight of the evidence against him, it cannot be said that the introduction into evidence of the illegally obtained admission resulted in a miscarriage of justice requiring reversal under article VI, section 4½, of the California Constitution.

■ Appellant next complains of the introduction into evidence of the clothing taken from his house on the ground that the same was the product of an illegal search and seizure. This argument is of no moment for the reason that appellant's counsel not only failed to object to the introduction of the clothing, but stated, "Fine. No objection." It is settled that the question of illegal arrest, search or seizure may not be raised for the first time on appeal. (*People* v. *Rivera* (1962) 202 Cal.App.2d 839, 842 [21 Cal.Rptr. 182] ; *People* v. *Demery* (1960) 187 Cal.App.2d 613, 614 [10 Cal.Rptr. 135].)

Appellant has filed a brief in propria persona which raised certain of the contentions already discussed, and which also alleged that the evidence was insufficient to support the rape conviction; that appellant was subjected to the "third degree"; that the prosecutor objected too frequently during the testimony of a witness for the defense; and that the trial judge was prejudiced against appellant. An examination of the record fails to disclose any merit to any of these contentions.

Judgment affirmed.

Agee, J., and Taylor, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied May 12, 1965.