[Civ. No. 54290. Second Dist., Div. One. Nov. 16, 1978.]

THE PEOPLE, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY,
Respondent;
CARLOS GREGORY McCANEY, Real Party in Interest.

## COUNSEL

John K. Van de Kamp, District Attorney, Arnold T. Guminski and Sterling S. Suga, Deputy District Attorneys, for Petitioner.

No appearance for Respondent.

Wilbur F. Littlefield, Public Defender, Dennis A. Fischer, Jerry Gordon and John L. Ryan, Deputy Public Defenders, for Real Party in Interest.

## OPINION

**LILLIE, Acting P. J.**—Defendant Carlos McCaney, real party in interest, is charged with eight counts of grand theft involving automobiles. He made a motion to suppress certain evidence pursuant to section 1538.5, Penal Code. After a hearing de novo the court denied the motion except for evidence relating to a Buick and its contents. Thereafter, on petition of the People this court issued alternative writ of mandate.

In deciding that the deputies had no right to seize and impound the Buick as a matter of law, the trial court expressly accepted the credibility of the People's witnesses. Their testimony establishes the following.

Around 3 p.m. Deputy Urbach, a sheriff's dispatcher, received a telephone call from a male who said he lived in defendant's neighborhood, but refused to reveal his name because he feared for his life; he described to Deputy Urbach an incident that he was then witnessing; while listening to him, Deputy Urbach radioed Deputies Phillips and Cortez to go to the location, and that he was then on the telephone with

the informant, who was relating to him a possible grand theft auto involving a blue and white Volkswagen sedan which was being pushed on a driveway at 16121 Pannes to 1022 Pannes, directly across the street, by two male Negroes wearing brown pants, one wearing a white T-shirt and the other bare from the waist, one of whom was David McCaney. Subsequently, the informant, who was still talking to Deputy Urbach, told him he was at a good vantage point and could see the deputies arriving on the scene.

Deputy Phillips knew David McCaney, having arrested him a month before in the same area for grand theft auto. When he and Deputy Cortez arrived they saw defendant (Carlos McCaney), wearing tan pants and no shirt, standing at the driveway close to the garage; they observed that he had grease on both hands and forearms; at that time he heard Deputy Urbach via radio in the patrol car relating that the informant, who was still on the telephone, had just told him that from his vantage point he could see the two deputies and defendant, and that defendant was one of those he had seen pushing the Volkswagen, and that he had also seen defendant and David McCaney pushing two tires and wheels from the Volkswagen back across the street to 16121 Pannes.

Defendant told Deputy Phillips his name was Charles Johnson and was 17 years old. The deputies detained him for investigation of grand theft auto because he fit the informant's description, and they believed the Volkswagen might be stolen. According to Deputy Phillips, it was unusual to push the Volkswagen from an inhabited dwelling to a vacant one, then push two tires from the vacant dwelling to the inhabited one, and in his experience stolen vehicles are usually stripped at vacant dwellings. At the rear of 1022 Pannes, which was a vacant boarded house, the deputies found a Volkswagen with two front wheels missing, and in the garage, a 1963 white Chevrolet with the front-end assembly (hood, headlights, radiator, radiator cowling and grill) missing; a check revealed these two vehicles had been reported stolen. Defendant was arrested and again advised of his rights. Taken from defendant's front pocket were two lug nuts, both stamped "VW"; Deputy Phillips did not know at that time defendant was related to David McCaney.

The deputies then told Mark McCaney, an adult and older brother of David, at 16121 Pannes they were conducting a grand theft auto investigation; he gave consent to search the area for parts from the missing vehicles. They found a radiator cowling alongside of the door of the garage; inside the garage were two tires, headlights, miscellaneous

parts and a white hood, none of which Mark could identify for ownership. The white hood fit the 1963 white Chevrolet; the two tires were too large for and did not fit the Volkswagen, but the two lug nuts found in defendant's pocket fit the lug holes in the front wheels of the Volkswagen.

Parked on the driveway of 16121 Pannes, close to the sidewalk facing toward the street with the rear trunk facing the garage, was a Buick; the deputies asked defendant to whom the Buick belonged; defendant said it was his and "You can search it if you want." The door of the car was unlocked but the trunk of the Buick was locked; Deputy Phillips asked defendant for the keys but he said he did not have them; Deputy Cortez could find no keys in the vehicle nor could he find the registration or any indicia of ownership; defendant could not produce a registration certificate. Deputy Phillips knocked on the front door and asked defendant's mother (Mrs. McCaney) to whom the Buick belonged; she said it belonged to Charles Johnson, he had driven it earlier that morning and it had been in the driveway since. A check of the license number and identification number of the Buick showed it had not been registered since 1975; it had been registered in 1975 to the Tenalts who lived on East Imperial Highway; it had not been reported as stolen. The deputies decided to impound the Buick. They did so, according to Deputy Phillips, because they were unable to locate the tires and wheels from the Volkswagen and could not open the trunk, and he believed the tires and wheels were concealed inside of the trunk. According to Deputy Cortez, he decided to impound the Buick because he believed the Volkswagen tires and wheels might be concealed in the trunk, and should they be left there after defendant was taken to the station someone might remove them from the trunk; defendant claimed to own the Buick but could produce no keys, registration certificate or other indicia of ownership, and he believed since the Buick was parked across the street from where the Volkswagen and Chevrolet were recovered as stolen, it was likely that the Buick, too, was a stolen vehicle; although the Buick had not been reported as stolen, he felt that the owner may not yet have made a report; and the registration was delinquent and the Buick should be impounded for further investigation to clarify its status. Defendant was then transported to the station.

The evidence relating to the Buick and its contents was only part of evidence defendant sought to suppress on his section 1538.5 motion the hearing on which began July 11, 1978; at the conclusion of the People's case the court announced "that with respect to just the limited issue in this

hearing—that is whether or not any evidence obtained from the Buick should be suppressed . . .," it would make a ruling if counsel wanted to argue "that particular limited point." Thereafter the court said, "Although I have not heard all the evidence obviously in this hearing . . . my order will simply be that the court will grant the motion as to any evidence or information received with respect to that Buick or learned with respect to that Buick." The hearing on the motion continued and defendant put on his witnesses; he did not finish that day and the court continued the hearing to the next. On July 12, when the defense rested and at the close of the rebuttal testimony, the prosecutor requested permission to reopen his case-in-chief on the issue of the Buick to give Deputy Cortez the opportunity to explain the reasons for his decision to impound it; the court granted the request, and Deputy Cortez testified. Thereafter, the judge said he had heard nothing that would cause him to change his mind, and ruled as a matter of law that the deputies had no right to seize and impound the Buick. Argument on the motion was then heard and, after making various findings, the court denied the section 1538.5 motion as to all physical evidence and statements obtained from defendant with the exception of evidence relating to the Buick.

The petition for writ of mandate was filed on August 11, 1978. The People relied on the date the hearing on the motion concluded and the court rules thereon (July 12, 1978), as the basis for computing the 30-day limit in accordance with section 1538.5, subdivision (o), Penal Code which provides that within 30 days after the motion is granted the People may file a petition for writ of mandate or prohibition seeking appellate review of the ruling. Real party in interest challenges the jurisdiction of this court on the premise that the 30-day period ran from July 11, 1978, the day the trial court ruled on that portion of the motion relating to the Buick, thus the People's petition is untimely having been filed on the 31st day. He argues that when the court made its ruling on part of the motion on July 11, it lost jurisdiction to reconsider that matter on the People's motion to reopen on July 12; and cites to our attention the holding of the Supreme Court in *Madril* v. *Superior Court*, 15 Cal.3d 73 [123 Cal.Rptr. 465, 539 P.2d 33], "that determination of a 1538.5 motion at a special hearing in the superior court—whether in the defendant's or in the People's favor—deprives that court of jurisdiction to reconsider the matter unless the People, pursuant to subdivision (j), seek to reopen the matter *at trial* upon a showing of good cause." (Pp. 77-78; original italics.)

*Madril* involved a motion to reopen made by the People a week after defendant's motion to suppress had been granted. The court granted the

motion to reopen and reversed its ruling on the section 1538.5 motion. The question presented in this factual situation was whether the court, having once granted the section 1538.5·motion, had jurisdiction to reconsider it prior to trial. The Supreme Court reversed the trial court's order, declaring that the parties are entitled to a one-time hearing only in the superior court on a section 1538.5 motion prior to trial, thus precluding any successive hearings after the conclusion of the initial hearing and determination on the motion. In reaching its conclusion, the court reaffirmed previous of its cases "pointing out that 'the intent underlying [section 1538.5] was to reduce unnecessary waste of judicial time and effort involved in the prior procedures, whereby search and seizure questions could be repeatedly raised in criminal proceedings.' [Citations.]" (15 Cal.3d at p. 76.)

■ For the following reasons we hold that the petition herein was timely filed. First, the record supports only one section 1538.5 motion which involved numerous items of evidence, only one of which related to the Buick, and only one hearing thereon; and the only reasonable construction of the record is that the trial court ruled piecemeal on the motion to suppress. Second, *Madril* and cases cited therein strongly indicate that piecemeal rulings should not be permitted. Sanction of piecemeal rulings on a motion to suppress, such as made herein by the trial court, run counter to the policy of judicial economy and the prompt and orderly process of criminal pretrial motion practice and appellate review underlying *Madril*. (15 Cal.3d, pp. 76-77.) A rule of procedure that permits piecemeal rulings on a section 1538.5 motion presents the specter of multiple petitions, one to review each separate ruling, and encouragement to the trial court to delay the process of ruling on motions to suppress by fragmentation of the process. Finally, consistent with the policy considerations upon which *Madril* is based, we deem to be tentative only all purported rulings on any part of the motion to suppress made prior to the final ruling thereon.

■ The sole appellate question relates to the validity of the warrantless seizure and search of the Buick.[1] We resolve the issue adverse to real party in interest on several independent grounds. First, "consent is an exception to the warrant requirement [citations]." (*People* v. *Rogers,* 21 Cal.3d 542, 549 [146 Cal.Rptr. 732, 579 P.2d 1048]), and defendant gave his consent to the search of the Buick—he said the Buick belonged to him and "You can search it if you want." Second, there was probable cause to

---

[1]On the other issues, the court found (1) the temporary detention of defendant to be legal; (2) the deputies had a right to go on the premises at 16121 Pannes to seek the owner to obtain permission to search; (3) Mark McCaney gave his valid consent to a search of the premises; and (4) there was "more than enough probable cause" to arrest defendant.

believe the Buick might have been stolen, thus it was proper to impound the vehicle pending further inquiry. (*People* v. *Ely*, 76 Cal.App.3d 1006, 1008 [143 Cal.Rptr. 344].) Third, exigent circumstances rendering the obtaining of a warrant an impractical alternative were clearly present, as well as probable cause for the deputies to believe the Buick contained evidence of a crime and was itself an instrumentality of the commission of one. (*People* v. *Dumas*, 9 Cal.3d 871, 884 [109 Cal.Rptr. 304, 512 P.2d 1208]; *People* v. *Cook*, 13 Cal.3d 663, 669 [119 Cal.Rptr. 500, 532 P.2d 148].) Thus constitutionally empowered to search the Buick at the scene, the fact that it was impounded and not searched until later does not alter the constitutional status quo. (*People* v. *Hill*, 12 Cal.3d 731, 751 [117 Cal.Rptr. 393, 528 P.2d 1]; *People* v. *Laursen*, 8 Cal.3d 192, 202 [104 Cal.Rptr. 425, 501 P.2d 1145].)

■ "[P]robable cause for a search exists where an officer is aware of facts that would lead a man of ordinary caution or prudence to believe, and conscientiously to entertain, a strong suspicion that the object of the search is in the particular place to be searched. [Citations.]" (*Wimberly* v. *Superior Court*, 16 Cal.3d 557, 564 [128 Cal.Rptr. 641, 547 P.2d 417].) Each case must be decided on the facts and circumstances known to the officers at the time they are required to act (*Guidi* v. *Superior Court*, 10 Cal.3d 1, 9 [109 Cal.Rptr. 684, 513 P.2d 908]; *People* v. *Gale*, 9 Cal.3d 788, 795 [108 Cal.Rptr. 852, 511 P.2d 1204]) and "on the total atmosphere" of the case. (*People* v. *Ingle*, 53 Cal.2d 407, 412 [2 Cal.Rptr. 14, 348 P.2d 577].)

■ We briefly summarize the evidence establishing that the deputies had probable cause to believe the Buick was stolen, and the trunk contained the two wheels and tires of the stolen Volkswagen. ■ First, a citizen informant relayed to Deputy Urbach the incident as he witnessed it—defendant and David McCaney pushing a Volkswagen from 16121 Pannes across the street to an unoccupied dwelling, then rolling two tires and wheels from the Volkswagen back across the street to 16121 Pannes. He was more than a mere informer. (*Krauss* v. *Superior Court*, 5 Cal.3d 418, 422 [96 Cal.Rptr. 455, 487 P.2d 1023].) In any case, the circumstances of his observations and transmittal thereof while the incident was occurring, and the on-the-scene observations of the deputies justified their reliance on the information conveyed to them through official channels via radio by Deputy Urbach. (*People* v. *DeVaughn*, 18 Cal.3d 889, 895 [135 Cal.Rptr. 786, 558 P.2d 872].) ■ Second, Deputy Phillips knew from experience that stolen vehicles are usually stripped at vacant dwellings, thus in light of his experience he was entitled to draw from the fact that defendant and David McCaney were

seen rolling two tires and wheels from the stolen Volkswagen from the unoccupied premises across the street, an inference that they pushed the Volkswagen to 1022 Pannes, stripped it of its tires and rolled them back to the premises. (*People* v. *Block,* 6 Cal.3d 239, 244 [103 Cal.Rptr. 281, 499 P.2d 961].) Third, the deputies' personal observations supplied additional facts connecting defendant to criminal activity. Defendant was standing in the driveway next to the garage when the deputies arrived; he had grease on his hands and forearms; in his pocket were two lug nuts stamped "VW" which fit the lug holes in the front wheels of the stolen Volkswagen, the front wheels of which were missing. The deputies searched both premises and although they found miscellaneous car parts, some of which fit the stolen Chevrolet, they did not find the tires and wheels belonging to the stolen Volkswagen.

Thus, when the deputies contemplated the Buick they had reasonable grounds to believe that the two tires and wheels were concealed in the locked trunk and, in addition, that the Buick was stolen. (1) The Buick was parked directly across the street from where two stolen vehicles had been recovered. (2) Defendant had some connection with the stolen Volkswagen—he had pushed it across the street, rolled two of its tires and wheels back to the McCaney premises, had grease on his arms and hands and had two "VW" lug nuts in his pocket that fit the lug holes of the front wheels of the Volkswagen. (3) The Buick was backed up in the driveway with the rear facing the garage, making the trunk easily accessible for concealment of the tires. (4) When the deputies arrived defendant was standing by the driveway at the garage. (5) Defendant said the Buick was his and they could search it, but the trunk was locked and defendant could not produce the keys. (6) Defendant's mother said that the car belonged to Charles Johnson, had been driven in that morning and had remained in the driveway. (7) The Buick contained no registration certificate, and defendant could not produce a registration certificate or other indicia of ownership. Although it is true that an on-the-scene check of the license and identification number of the Buick did not show it had been stolen, it did disclose that the Buick had not been registered since 1975 and the last registered owners were the Tenalts on East Imperial Highway. What constitutes reasonable cause to suspect auto theft varies (*People* v. *Williams,* 17 Cal.App.3d 275, 278 [94 Cal.Rptr. 735]) but the circumstances here strongly suggested a stolen car. Deputy Cortez testified that he believed the Buick to be stolen based upon the foregoing evidence and the delinquent registration entertaining the possibility that, in fact, it was stolen but the owner may not yet have made a report to police.

Among the reasons for impounding the Buick articulated by the deputies was that should the tires and wheels, which they believed to be concealed in the trunk, be left there after defendant was taken to the police station, someone might remove them from the trunk of the Buick. The evidence establishes that although he claimed ownership of the Buick defendant could not produce the keys to the trunk or the vehicle; the inference then that someone else had the keys was reasonable. It was also reasonable to assume that that person was David McCaney, who had been seen with defendant rolling the Volkswagen tires to the McCaney premises, but who was not located on the premises by the deputies. It would appear, therefore, that the deputies had probable cause to believe that David knew that the tires were in the locked trunk, had the keys thereto and if the Buick were left in the driveway after defendant was taken to the station, David would remove the tires, if not remove the Buick. (See *Emslie* v. *State Bar,* 11 Cal.3d 210, 223 [113 Cal.Rptr. 175, 520 P.2d 991].)

For the foregoing reasons the court orders a peremptory writ to issue directing the superior court to vacate the orders of July 11, 1978, and July 12, 1978, granting the motion to suppress any and all evidence relating to the Buick and its contents, and make a new and different order denying the motion in its entirety.

Thompson, J., and Hanson, J., concurred.

A petition for a rehearing was denied December 12, 1978, and the petition of the real party in interest for a hearing by the Supreme Court was denied January 24, 1979.