[Civ. No. 5267. Fifth Dist. May 27, 1980.]

CARLOS ROQUE ONDARZA, Petitioner, v.
THE SUPERIOR COURT OF FRESNO COUNTY, Respondent;
THE PEOPLE, Real Party in Interest.

196

**COUNSEL**

Gomes, Gomes, Fiske & Berman and Gene M. Gomes for Petitioner.

No appearance for Respondent.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Arnold O. Overoye, Assistant Attorney General, Charles P. Just, Nancy L. Sweet and David DeAlba, Deputy Attorneys General, for Real Party in Interest.

**OPINION**

**BROWN (G. A.), P. J.**—Petitioner, Carlos Roque Ondarza, seeks a pretrial writ of mandate directing the trial court to grant his motion to

dismiss (Pen. Code, § 995) and to suppress evidence (Pen. Code, § 1538.5). The motions were heard upon the preliminary hearing testimony and the testimony elicited at the de novo hearing on the motions.

The petitioner was charged by information with two counts of soliciting another to receive stolen property (Pen. Code, § 653f, subd. (a)), five counts of attempting to receive stolen property (Pen. Code, §§ 664, 496), and a count of selling and furnishing cocaine (Health & Saf. Code, § 11352).

The evidence sought to be suppressed was seized by the police as a result of a search warrant authorizing the search of petitioner's residence for a Quasar Video-matic player which was one of the items upon which one of the charges of attempting to receive stolen property was predicated.

A second point raised in the petition is that the trial court should have granted the motion to dismiss the charge of selling cocaine. This contention is grounded upon the assumption that the magistrate at the conclusion of the preliminary hearing determined that there was insufficient evidence to hold appellant to answer on that count. Nevertheless, the district attorney refiled the identical charge in the superior court. Petitioner contends the district attorney was precluded from refiling a charge by the magistrate's factual finding.

FACTS

Officer Santellano, an undercover Fresno police officer, was introduced to petitioner by Robert Larson (petitioner's codefendant) under the sobriquet of "Joe Hernandez." The officer had previously sold a microwave oven to Larson. Santellano testified that Larson introduced petitioner as the man who could help him obtain cocaine. During this initial meeting, Santellano told petitioner that he was interested in buying some cocaine; he further asked petitioner "if he needed anything." In response, petitioner indicated to Santellano that he needed some leather coats.

As a result of their conversation, Santellano sold petitioner a leather coat for $30. In response to an inquiry by Santellano, petitioner stated that he was going to contact an individual in San Jose who could possibly bring him a sample of cocaine. Santellano further indicated that petitioner voiced a desire to obtain a video-matic.

During his transactions with petitioner, Santellano repeatedly asked where he could buy cocaine. Petitioner told Santellano he was going to contact a person in San Jose later that night and arrange "to set up some cocaine." During the next morning petitioner gave Santellano a phone number to call in San Jose and told him that the subject's name was Linda. Moreover, petitioner inquired once again about the video tape recorder that Santellano had promised him. Subsequently, Santellano contacted Linda in San Jose and bought from her what was represented as half an ounce of cocaine.

## DISCUSSION

The Attorney General raises a preliminary procedural point which can be quickly resolved.

He argues the petition in this court pursuant to Penal Code section 999a is untimely. That section requires that a section 999a petition filed in this court "predicated upon the ground that...the defendant had been committed on an information without reasonable or probable cause" must be filed within 15 days after the denial of the Penal Code section 995 motion in the trial court. Here 20 days elapsed. ▉ The 15-day time limit only bars the contention in a section 995 motion that insufficient evidence supported the magistrate's finding of probable cause; it does not bar petitioner's claim that he was illegally committed, which is the basis upon which the petition here is grounded. (Code Civ. Proc., § 1086; Pen. Code, § 1538.5, subd. (i); *Guerin* v. *Superior Court* (1969) 269 Cal.App.2d 80, 81 [75 Cal.Rptr. 923]; *McGonagill* v. *Superior Court* (1963) 214 Cal.App.2d 192, 194-195 [29 Cal.Rptr. 485]; cf., *Penney* v. *Superior Court* (1972) 28 Cal.App.3d 941, 944 [105 Cal.Rptr. 162].) Accordingly, the petition herein is timely.

Turning first to the sale of cocaine charge (count eight), petitioner initially contends that respondent court lacks jurisdiction to entertain that count because with respect to it petitioner engaged in no criminal activity in Fresno County. The contention must be rejected. As to that count petitioner was charged as aider and abettor to the sale by Linda to Santellano in Santa Clara County. The evidence showed that petitioner made the preliminary arrangements for the transaction in Fresno County, including a telephone call from Fresno County to San Jose. (2) Fresno clearly had jurisdiction. (See *People* v. *Tabucchi* (1976) 64 Cal.App.3d 133, 140 [134 Cal.Rptr. 245]; Witkin, Cal. Criminal Procedure (1963) Jurisdiction and Venue, § 70, pp. 67-68.)

Petitioner's principal contention with respect to the sale of cocaine charge is that the district attorney improperly charged him with the identical offense in the information, since the magistrate found insufficient probable cause to hold him to answer at the preliminary hearing.

The seminal case of *Jones* v. *Superior Court* (1971) 4 Cal.3d 660, 664-665 [94 Cal.Rptr. 289, 483 P.2d 1241], establishes that an information which charges the commission of an offense not named in the commitment order will not be upheld unless (1) the evidence before the magistrate shows that such offense was committed and (2) the offense was transactionally related to offenses forming the basis of the commitment. *Jones* and its offspring establish that an offense may not be recharged where the magistrate has made factual findings that the evidence is insufficient. However, the magistrate's legal conclusions may be challenged. The distinction was clarified in *Pizano* v. *Superior Court* (1978) 21 Cal.3d 128, 133 [145 Cal.Rptr. 524, 577 P.2d 659]: "...an offense not named in the commitment order may not be added to the information if the magistrate made *factual findings* which are fatal to the asserted conclusion that the offense was committed. A clear example of this would be when the magistrate expresses disbelief of a witness whose testimony is essential to the establishment of some element of the corpus delicti. When, however, the magistrate either expressly or impliedly accepts the evidence and simply reaches the ultimate *legal conclusion* that it does not provide probable cause to believe the offense was committed, such conclusion is open to challenge by adding the offense to the information."

In the case before us, the magistrate's explanation of his refusal to hold petitioner for sale of cocaine demonstrates a legal rather than factual conclusion. The magistrate did not indicate that he thought the testimony of Santellano was incredulous or improbable. Instead, the magistrate voiced a personal opinion that there was insufficient evidence to charge petitioner with a violation of Health and Safety Code section 11352. ▇ Since such a determination is a legal conclusion, the district attorney did not impermissibly charge petitioner with having violated Health and Safety Code section 11352 insofar as this prong of the *Jones* test is concerned.

However, an examination of the second prong of the *Jones* test compels a conclusion that the sale of cocaine charge was not transactionally related to the offenses forming the basis of the commitment.

The Supreme Court in *Parks* v. *Superior Court* (1952) 38 Cal.2d 609 [241 P.2d 521] provided the continuing valid analysis of the transactional requirement. The defendant in *Parks* was charged by complaint with two counts of grand theft and one count of writing a bad check. One count of grand theft was based on the allegation that defendant obtained a loan from a Mrs. Palmer by misrepresentations; the other grand theft count and bad check count were founded upon a contract with a lumber company from which the defendant obtained possession of lumber and subsequently issued a bad check in payment. The magistrate discharged defendant as to both grand theft counts but held him to answer the bad check allegation; the district attorney, however, filed an information charging all three offenses. The Supreme Court held that defendant was not properly charged with the first grand theft offense since it was unrelated to the transaction on which the commitment order was based. As to the second grand theft count, however, the court stated: "As indicated herein the district attorney might include a related offense although the magistrate concluded impliedly or otherwise that the evidence did not show probable cause that such offense had been committed. The charges as to the theft of the lumber and the giving of a worthless check in payment thereof were related, arose out of the transaction which was the basis for the commitment and, depending on the evidence, could result in conviction on one charge or the other. The district attorney was therefore within his right to include the grand theft charge in the information if the necessary elements of that offense reasonably appeared from the evidence before the magistrate." (*Parks* v. *Superior Court, supra*, 38 Cal.2d at pp. 613-614.)

The Supreme Court has consistently followed the dictates outlined in *Parks* over the years. (See *People* v. *Evans* (1952) 39 Cal.2d 242, 249 [246 P.2d 636]; *People* v. *Downer* (1962) 57 Cal.2d 800, 810-811 [22 Cal.Rptr. 347, 372 P.2d 107]; *People* v. *Chimel* (1968) 68 Cal.2d 436, 443 [67 Cal.Rptr. 421, 439 P.2d 333], revd. on other grounds *Chimel* v. *California* (1969) 395 U.S. 752, 768 [23 L.Ed.2d 685, 696-697, 89 S.Ct. 2034].) The Supreme Court, in *Jones* v. *Superior Court, supra*, 4 Cal.3d 660, reaffirmed the vitality of the *Parks* test, notwithstanding the fact that it did not have to apply the transactional standard in the case before it. (*Id.*, at p. 665.) Recently, in *Pizano* v. *Superior Court, supra*, 21 Cal.3d 128, the court found a transactional nexus between a murder count in an information and several robbery and burglary counts forming the basis of the commitment order. The court so concluded from facts showing that the defendant (one of the robbers and

burglars) initiated the course of events which led to a killing by an ex-
cited neighbor who lived near the robbery victims. (*Pizano, supra*, 21
Cal.3d at pp. 132-134.)

Court of Appeal cases have also discussed and followed the transac-
tional relationship test. (See *People* v. *Superior Court* (*Grilli*) (1978)
84 Cal.App.3d 506, 510-512 [148 Cal.Rptr. 740], criticized on other
grounds in *Ghent* v. *Superior Court* (1979) 90 Cal.App.3d 944, 954
[153 Cal.Rptr. 720]; *People* v. *Saldana* (1965) 233 Cal.App.2d 24,
29-30 [43 Cal.Rptr. 312], cert. den. (1966) 384 U.S. 1026 [16 L.Ed.2d
1032, 86 S.Ct. 1938]; *Mulkey* v. *Superior Court* (1963) 220 Cal.
App.2d 817, 821, 825 [34 Cal.Rptr. 121].)

These cases rather clearly set the parameters of the transactional re-
lationship test. ■ Applying that test to the facts of this case, it
becomes clear that the trial judge improperly found a nexus between
the crimes of receiving stolen property (a basis of the commitment or-
der) and the sale of cocaine (an offense charged in the information). At
the hearing on the motion to dismiss, the trial court conjectured that a
transactional relationship was established from the fact that Santellano
and petitioner discussed cocaine and the purchase of stolen property *at
the same time*. This coincidental connection between the two offenses
does not establish the requisite causality under the transactional test. In
*Mulkey, supra*, the court rejected a contention that a course of conduct
would constitute sufficient relationship to permit added counts of sepa-
rate and distinct offenses involving *different* forged instrumentalities.
Furthermore, *Saldana, supra*, teaches that commission of two separate
crimes on the same day does not justify an inference that they were
necessarily connected. Given both the dissimilarity between the two of-
fenses and the disparate nature of the individuals involved in each
instance, the trial court erred in finding a transactional relationship be-
tween the sale of cocaine count and other crimes forming the basis of
the commitment order.

*People* v. *Eitzen* (1974) 43 Cal.App.3d 253, 262-265 [117 Cal.Rptr.
772], and *People* v. *Farley* (1971) 19 Cal.App.3d 215, 221-222 [96
Cal.Rptr. 478], relied upon by real party, are inapposite. An examina-
tion of those cases reveals the courts rendering those opinions
overlooked the transactional prong enunciated by the Supreme Court in
*Parks, supra*, and *Jones, supra*. The counts in *Eitzen* and *Farley* mere-
ly focused upon whether the legal conclusion of the magistrate was

either proper or could be challenged by the district attorney in the information that he filed.

Accordingly, the motion to dismiss the sale of cocaine count (count eight) should have been granted by the trial court.

Lastly, petitioner contends that if the court had properly followed the dictates of *Theodor v. Superior Court* (1972) 8 Cal.3d 77 [104 Cal.Rptr. 226, 501 P.2d 234] it would have excised the word "stolen" from the search warrant affidavit; and that without that word there was no probable cause for the issuance of the warrant. Petitioner concludes that the motion to suppress should therefore have been granted.

A search warrant authorizing the search of petitioner's residence for a Quasar Video-matic player was obtained by affiant Edward L. Means, a Fresno police detective. In order to establish probable cause for the belief that petitioner had received stolen property, Means reiterated the facts contained in a police report by Officer Santellano, the undercover agent who had dealings with petitioner. Based upon information in Santellano's police report, Means described how Santellano used a fenced video-matic from the Fresno Police Department for the purpose of satisfying petitioner's request to "get him" a video-matic. Means outlined the delivery of the video-matic player to petitioner from Santellano's police report. After securing petitioner's permission, Santellano delivered the video-matic player to petitioner's apartment premises on May 11, 1979. The affidavit then stated: "Your affiant continued reading Santellano's report and read that both Santellano and Ondarza sat on the sofa and Santellano told Ondarza that this was the one we had *stolen in San Jose*, and if Ondarza wasn't satisfied to let Santellano know and he would get him another." (Italics added.) Means then related that petitioner gave Santellano $200 for the video-matic and then Santellano subsequently booked the currency as police evidence. Based on this information, the magistrate issued a warrant for the search of petitioner's apartment and automobile on May 17, 1979.

At the hearing on the suppression motion, the police report of Officer Santellano which was mentioned in the affidavit was introduced. Contrary to the assertion of the affiant Means, Santellano said the following in the report: "We [Santellano and petitioner] then sat down on the sofa and I told him that this was the one we had *taken in San Jose* and if he was not satisfied to let me know and I would get him an-

other." (Italics added.) Means also testified that the video-matic player was not seized during the search, although several items were confiscated which were in plain sight.

The lower court denied the suppression motion on the grounds that (1) petitioner had not shown that the inaccuracy in the affidavit was deliberately false, and (2) the items other than the video player were properly seized as plain view articles. Petitioner does not argue that Officer Means wilfully made the challenged transposition so as to bring the principles of *People* v. *Cook* (1978) 22 Cal.3d 67, 75 [148 Cal.Rptr. 605, 583 P.2d 130], into play. He argues that under *Theodor* v. *Superior Court, supra,* 8 Cal.3d at pages 100-101, the word "stolen" must be excised, leaving insufficient probable cause for issuance of the warrant. The policy behind *Theodor*, of course, is to allow an accused to show that the affidavit contains factual misstatements which could have had an adverse effect upon the normal inference-drawing process of the magistrate in determining whether probable cause exists. (See *People* v. *Neusom* (1977) 76 Cal.App.3d 534, 538 [143 Cal.Rptr. 27].)

Assuming that in fact there was an erroneous inclusion of the word "stolen" in the affidavit, the issue would be whether the transposition in terms is material. ■ While I concur with my colleague Hopper that it was not, that issue need not be addressed because it appears the trial court could have reasonably concluded that the word "stolen" was properly included in the affidavit and that the word "taken" was improperly used by Officer Santellano in the police report.

The affidavit includes the following statement: "This date 5-12-79 at 0830 hours, your affiant met with Officer P. Santellano at FPD H.Q., Detective Division and Santellano told your affiant that after reading this affidavit that the contents are true and correct." Since the affidavit used the word "stolen," there is a conflict in Santellano's statements as to whether the word "stolen" or the word "taken" (used in the police report) is correct. Santellano could have mistakenly used the word "taken" in the police report.

We, of course, are bound to resolve this conflict in favor of the trial court's order. ■ It is firmly established that, in reviewing a disputed Fourth Amendment claim made in a suppression hearing, the trial court is vested with the power to judge the credibility of witnesses, resolve factual conflicts, weigh evidence or draw factual inferences. This court may not reweigh evidence or draw factual inferences other than those

reasonably drawn by the trial court. All presumptions are in favor of the exercise of the trial court's power and its findings, whether express or implied, must be upheld if they are supported by substantial evidence. (*People* v. *Superior Court (Keithley)* (1975) 13 Cal.3d 406, 410 [118 Cal.Rptr. 617, 530 P.2d 585]; *People* v. *King* (1977) 72 Cal. App.3d 346, 349 [139 Cal.Rptr. 926]; *People* v. *Payne* (1977) 65 Cal. App.3d 679, 681 [135 Cal.Rptr. 480]; *People* v. *Podesto* (1976) 62 Cal. App.3d 708, 715 [133 Cal.Rptr. 409].)

Moreover, these rules are applied to the final ruling of the trial court irrespective of the intermediate rulings or statements that may have been made during the course of the proceedings. (*People* v. *Superior Court (McCaney)* (1978) 86 Cal.App.3d 366, 371-372 [150 Cal.Rptr. 227].)

Accordingly, the trial court's implied finding that the correct word is "stolen" and the order of the trial court denying the motion to suppress must be affirmed.

Let a peremptory writ of mandate issue directing the respondent court to enter an order granting petitioner's motion to dismiss count eight (sale of cocaine). The petition is otherwise denied.

**HOPPER, J.**—I concur in the judgment and the reasoning of the principal opinion with respect to the motion to dismiss count eight. I also concur in the judgment with respect to the motion to suppress but I reach that result by a different path.

The standard for reviewing an affidavit for a search warrant established by the United States and the California Supreme Courts requires that we construe such an affidavit in a common sense and realistic fashion rather than in a hypertechnical manner. (*United States* v. *Ventresca* (1965) 380 U.S. 102, 108-109 [13 L.Ed.2d 684, 688-689, 85 S.Ct. 741]; *People* v. *Ruster* (1976) 16 Cal.3d 690, 702 [129 Cal.Rptr. 153, 548 P.2d 353, 80 A.L.R.3d 1269]; *People* v. *Mesa* (1975) 14 Cal.3d 466, 469 [121 Cal.Rptr. 473, 535 P.2d 337]; *People* v. *Superior Court (Johnson)* (1972) 6 Cal.3d 704, 711 [100 Cal.Rptr. 319, 493 P.2d 1183].) Applying such standard to the affidavit in this case, I conclude that considering all of the circumstances the words "stolen" and "taken" when used by the affiant police officer are synonymous. Justice Holmes has told us that "A word is not a crystal, transparent

and unchanged, it is the skin of a living thought and may vary greatly in color and content according to the circumstances and the time in which it is used" (*Towne* v. *Eisner* (1918) 245 U.S. 418, 425 [62 L.Ed. 372, 376, 38 S.Ct. 158]) and Justice Learned Hand has reminded us that ". . .words are chameleons, which reflect the color of their environment. . ." (*Commissioner of Internal Rev.* v. *National Carbide Corp.* (2d Cir. 1948) 167 F.2d 304, 306).

Words simply do not always have a fixed precise meaning. While "taken" and "stolen" each have many shades of meanings not all of which are synonymous (although one definition of steal is "to take away *dishonestly*" (10 Oxford English Dict. (1933) p. 884, col. 3) (italics added); see also the various CALJIC sections using the term *take* with requisite specific intent such as CALJIC No. 14.02 (Theft By Larceny), CALJIC No. 14.35 (Grand Theft Of An Automobile), and CALJIC No. 14.36 (Vehicle Taking), I submit that in everyday police parlance, as here, and viewed in the light of the pervading atmosphere of the situation, the word *taken* means *stolen*. People, not bare words, determine meaning. There would simply be no reason to even make the police report on this incident if the property had been merely *taken on consignment* or in some manner other than dishonestly.

The motion to suppress was properly denied. The motion to dismiss count eight should have been granted.

Brown (G. A.), P. J., concurred.

**ZENOVICH, J.,** Concurring and Dissenting.—I concur in the conclusion that count eight of the information was not transactionally related to the offenses for which petitioner was committed. The lead opinion most correctly criticizes the *Eitzen* and *Farley* decisions for ignoring the transactional requirement enunciated in *Parks* and its progeny.

Nonetheless, I believe the suppression motion relating to the videomatic search warrant should have been granted. Thus, I dissent from the portion of the lead opinion which sustains the denial of that motion.

The lead opinion reasons that the lower court made an implied finding that Santellano had improperly penned "taken" in his police report, thereby rendering the affidavit valid (which used the correct word —"stolen"). There is no support for such a theory in the record of the

suppression hearing. The court below discussed whether "stolen" and "taken" were synonymous or materially different in meaning. The lead opinion notes that we cannot draw actual inferences other than those *reasonably drawn by the trial court.* Given the trial judge's focus on materiality of the transposition, the lead opinion gratuitously finds an implied finding which was probably not drawn by the lower court from the evidence adduced at the suppression hearing. Moreover, the lead opinion cites to *McCaney* for the proposition that intermediate statements made at the suppression hearing are disregarded when adjudging the validity of the final ruling. In *McCaney*, the court was faced with a case involving piecemeal rulings on a singular suppression motion, finding "tentative only all purported rulings on any part of the motion to suppress made prior to the final ruling thereon." (*People* v. *Superior Court* (*McCaney*) (1978) 86 Cal.App.3d 366, 372 [150 Cal.Rptr. 227].) *McCaney* does not preclude a review of the trial court's intermediate statements for purposes of ascertaining *the grounds of the final ruling.* Since there is no indication that the trial judge found that Santellano made an error in his police report, I cannot agree with the implied finding which is purportedly sustained by the lead opinion.

The record of the suppression motion is, however, replete with suggestions that the lower court found that transposition of "stolen" for "taken" was not a *material* misstatement. The concurring opinion feels that the terms are synonymous in police parlance, making the transposition nonmaterial in nature. I respectfully disagree.

In discussing the materiality of the transposition, the trial judge and defense counsel engaged in the following colloquy at the suppression hearing:

"THE COURT: Well, what if the word taken was there?

"MR. GOMES [petitioner's counsel]: Pardon me?

"THE COURT: What if it did say taken? You don't think that that would be grounds for issuing the warrant? I, myself, do not think that you can obtain a search warrant to search a house for property when you allege in an affidavit that you told the person who has it anything less than it was stolen, but he knows it, or has good reason to know that it was stolen. I think that's the standard, probable cause to believe a crime has been committed.

"Wouldn't the word taken, as opposed to bought—

"Mr. Gomes: Not if he was a dealer, not if he was an appliance dealer, ones that are consignment items are often taken in, not stolen.

"The Court: Does it state that Mr. Santellano represented himself to be a consignment dealer, or his brother? How was that?

"Mr. Beck [deputy district attorney]: No, there was no representation on either part. That was a speculation on—or—

"Mr. Gomes: Speculation on prelim testimony.

"Mr. Beck: Speculation on what the magistrate might speculate, I think is appropriate.

"The Court: I see."

Thereafter, another exchange occurred after counsel for petitioner claimed that the mistake was material, factual and misled the magistrate. Petitioner's counsel suggested the possibility that the magistrate based his finding of probable cause upon an affidavit that said "stolen" when, in fact, a different result might have attended if the correct word from the police report—"taken"—had been used. In response to this argument, the court stated:

"The Court: Yes. That's correct, but in the light of all the circumstances, that was really a word that was being used synonymous with stolen.

"Mr. Gomes: *What circumstances?*

"The Court: *Well, I have read the transcript.*

"Mr. Gomes: Yes, Your Honor, but—

"The Court: And I know that that—this was in connection with that investigation that's involved *in the transcript*. It wasn't dealing with anything else other than a suspected crime of receiving stolen property.

"Mr. Gomes: Then that, the transcript information—

"THE COURT: They used the word stolen when they should have used the word taken. Now, the question, really, is whether they used the word taken; that there would be nothing there. It seems to me that there would be.

"MR. GOMES: *Your Honor, the events contained in the preliminary hearing transcript occurred months after this, the testimony of the events. You and I are privy to all that. The magistrate was not. The magistrate was only privy to the information contained in the affidavit.*

"THE COURT: Yes, but, well—I mean—

"MR. GOMES: *They could have put in all that, but they didn't. They relied solely on this one statement that Santellano told Ondarza that this tape recorder was stolen, and that is the basis they got their warrant,* and they went and searched, and now I am saying that the tape recorder was not represented to be stolen." (Italics added.)

The above discussion convinces me that there is a difference between the words "taken" and "stolen." Language is "'made up of a vast number of items, *each* of which has its own time, occasion, and *effect.*'" (Chomsky, Language and Mind (1972) p. 20, quoting William Dwight Whitney, italics added.) The trial court even alluded to the fact that the two words have their own divergent *effects*, although it erroneously found that they were synonymous based upon the preliminary hearing transcript. This reliance on the latter transcript was flawed, since the magistrate did not have the benefit of this record when reviewing affiant Means' search warrant. Instead, the issuing magistrate merely had the affidavit which contained the misstatement in his presence.

In determining probable cause, the magistrate must have facts and circumstances from which he can reasonably determine that criminal activity is being committed. (*Theodor* v. *Superior Court* (1972) 8 Cal.3d 77, 96 [104 Cal.Rptr. 226, 501 P.2d 234].) For the offense of receiving stolen property the facts and circumstances must show proof of the following three elements: the property was stolen, the accused received it in his possession, and the accused *knew* that it was stolen. (*People* v. *Martin* (1973) 9 Cal.3d 687, 695 [108 Cal.Rptr. 809, 511 P.2d 1161], cert. den. (1973) 414 U.S. 1113 [38 L.Ed.2d 740, 94 S.Ct. 844].) Although real party argues that the words "stolen" and "taken" are relatively synonymous, the word "stolen" has special significance in establishing that an offense might have been committed under Penal

Code section 496. As petitioner aptly points out, the magistrate could base probable cause on the word "stolen" alone, since it showed that he had the requisite knowledge for one of the elements of the crime. Petitioner correctly notes that probable cause might have been insufficiently established if the word "taken" was used in the affidavit, since it merely shows that Santellano might have *taken the items in* as a consignment dealer and subsequently transferred them to petitioner.[1] Since *Theodor* was designed to insure that accurate facts are given to the magistrate in order that he or she may determine probable cause (see *Rodriguez* v. *Superior Court* (1978) 87 Cal.App.3d 822, 831 [141 Cal.Rptr. 233]), I cannot assume that the substitution of the word "taken" was immaterial to the magistrate's determination. Given the different context in which "taken" can be used, the magistrate would reasonably need surrounding circumstances before deciding that the term was equivalent to the word "stolen."[2]

Since the affidavit contained a material misstatement, *Theodor* commands that the statement be excised from the warrant. "...when it has been established that the earlier finding of probable cause was based upon a broader set of 'facts,' some of which are now shown to be false, there is no longer any reason to give deferrence [*sic*] to that earlier finding. Thus, when a court reassesses a search warrant affidavit with the false allegations excised, a 'doubtful or marginal case' should be resolved in the defendant's favor." (2 LaFave, Search and Seizure (1978) Search Warrants, § 4.4, p. 68.) Once the excision is made, an examination of the warrant shows that the remaining facts and circumstances do not provide probable cause for believing that petitioner had committed criminal activity in regard to stolen property. When scrutinized with a neutral and detached perspective, the remainder of the affidavit merely shows that Santellano was conducting an undercover investigation, that he delivered a video player to petitioner, and that petitioner paid him for the delivery. These facts fall fatally short of establishing the elements of a sale of supposedly stolen property. As suggested by Professor LaFave, I believe that this situation is a proper one for resolving doubts in petitioner's favor after excision of the misstatement.

---

[1] It is also plausible for the word "taken" to mean that the items were procured at a foreclosure sale or were obtained from a legal execution by the officer (who happened to be a creditor).

[2] It is also clear that affiant Means acted negligently in not correctly quoting the word "taken" in his supporting affidavit. The importance of search warrant affidavits requires that officers accurately recite facts from other hearsay sources (such as police reports) to reviewing magistrates. (See *Rodriguez* v. *Superior Court, supra*, 87 Cal. App.3d at p. 831.)

Although words are not isolated crystals, I feel that there is a material difference between the words "stolen" and "taken." It is my conviction that a substantial number of magistrates would find a special impact in the word "stolen," since it is an essential element to proving receipt of *stolen* property. As Whitney observed about language in general, this misstatement has its own effect on the magistrate's reviewing process; thus, I regard it as a material transposition.

For the above reasons, I would grant the writ for purposes of suppressing the evidence seized pursuant to the warrant.